EBEN D. JORDAN & another *vs.* PELATIAH B. OSGOOD.

At the trial of an action which presented the issue whether the defendant obtained goods from the plaintiff by fraudulent representations, and also the issue whether he obtained the goods intending at the time not to pay for them, evidence of other frauds committed by the defendant about the time of obtaining the goods and making the alleged representations is not admissible upon either issue, unless it appears that such frauds and the obtaining of the goods in question were parts of one fraudulent scheme, committed in pursuance of a common purpose.

On an issue of a party's insolvency at the time of purchasing goods, the books of the bank where he kept his deposit are admissible, if supported by the oath of the bookkeeper, to show the amount of his deposit at that time.

At a trial where the books and schedules of the assets and debts of a party have been properly put in evidence, the presiding judge may allow an accountant who has examined them to give the results of computations therefrom, not involving inferences of his own judgment.

REPLEVIN of merchandise. At the trial in the superior court, before *Reed,* J., the plaintiffs, who were wholesale traders in dry goods, contended that the defendant, who was a retail trader, obtained the replevied goods, which they had sold and delivered to him on credit, by means of false and fraudulent representations to them as to his pecuniary condition, and also intending at the time not to pay for them.

The plaintiffs introduced evidence tending to show that on March 13, 1869, upon their refusal to sell to the defendant upon credit, unless he would give them a statement of his pecuniary condition, he told them that he had a capital of $6000 over and above his liabilities, had no accounts overdue and unpaid, and owed little borrowed money ; that, relying upon this statement, they sold him the replevied goods on credit ; that in fact he did not have $6000 capital, did have accounts overdue and unpaid, owed considerable borrowed money, and was insolvent and knew that he was so ; and that he failed on April 17, 1869, and was adjudged a bankrupt on his own petition May 6, 1869. The plaintiffs also contended that the defendant obtained goods of other persons about the same time by like fraudulent representations, and evidence tending to show this was admitted against the defendant's objection.

Albert Morse was allowed, against the defendant's objection, to testify that in a conversation with the defendant, in the early part of March 1869, he asked the defendant if he was worth $6000, as he had told him, two years before, he was when he began business ; that the defendant said he should be in a few days, and should want some goods; and that on March 17 and March 29 he bought some goods of the witness, which were never paid for.

The plaintiffs were also allowed, against the defendant's objection, to introduce evidence tending to show that the defendant bought goods in New York on March 5 from Hardy, Brown, Goss & Company, and represented to them that he had money in the bank to pay for them as soon as delivered, and that this statement was not true ; that on April 8 he told them, in reply to inquiries how his affairs stood at that time, that he had a stock of $15,000, owed $7000, had a surplus of some $8000, and owed no borrowed money except a little to his brother, who would never call for it ; and that afterwards they sold him goods.

The bookkeeper of the bank where the defendant kept his deposits was allowed, against the defendant's objection, to testify that on March 5 his account was overdrawn, and on March 13 there was a balance of $3.07 in his favor. The witness had a

transcript of the defendant's account taken from the bank books kept by him, which the defendant agreed might be used in the same way that the books could have been if present, and the witness testified, against the defendant's objection, to the state of the defendant's account at certain times, using the transcript to refresh his memory. The plaintiff then offered to show it to the jury. The defendant objected that it was not competent evidence. The judge said it was not evidence at all, but the jury had heard the statements from it, and could look at it if they wished; it contained nothing but what the witness had testified to.

The plaintiffs were allowed, against the defendant's objection, to introduce the record of the United States district court to show the claims against the defendant's estate in bankruptcy, for the purpose of proving that he owed for borrowed money. The books of the defendant and the schedules of debts and assets, filed and sworn to by him upon his going into bankruptcy, were put in evidence. The schedule of assets stated the defendant's stock in trade as worth $8000, and the goods replevied as $2875, but the correctness of these statements was in dispute.

A witness, called by the plaintiffs as an expert in bookkeeping, having testified that he had examined the books and schedules, the plaintiff asked him the following question : "Taking the defendant's purchases from March 1, 1869, down, deducting from them his sales and deducting from the amount thus ascertained the amount that he had on hand at the time he went into bankruptcy, assuming the schedule of assets to be true, how much stock had he on hand March 1, 1869 ?" The defendant objected to the question as argumentative and calling for reasoning and deductions on the part of the witness, and because it did not appear that he had sufficient data to make an answer. The judge overruled the objection, saying, "The witness is asked to state what the books show; he may state the result," and the witness answered, "$5,194.86." The two following questions were also allowed to be put to the witness, against the defendant's objection: "Assuming that the defendant owed at the time he went into bankruptcy $21,093.52, as set forth in his schedule of debts, and deducting what he paid according to his books from what he

purchased from March 1, 1869, down, what do you make his liabilities, according to his books, on March 1, 1869 ? " Answer " $12,662.75." " With the same assumptions, how much did he have on hand and how much did he owe on March 13, 1869 ? " Answer, " $16,023.20."

The jury returned a verdict for the plaintiffs " because of false representations," and the defendant alleged exceptions.

*A. A. Ranney & D. F. Crane,* for the defendant.

*J. D. Ball,* for the plaintiffs, to the point that evidence of other fraudulent representations was admissible, cited *Rowley* v. *Bigelow,* 12 Pick. 307 ; *Wiggin* v. *Day,* 9 Gray, 97 ; *Stebbins* v. *Miller,* 12 Allen, 591, 598 ; *Winchester* v. *Charter,* 97 Mass. 140 , *Lynde* v. *McGregor,* 13 Allen, 172 ; *Allison* v. *Matthieu,* 3 Johns. 235 ; *Hawes* v. *Dingley,* 17 Maine, 341 ; *Lincoln* **v.** *Claflin,* 7 Wallace, 132 ; *Cary* v. *Hotailing,* 1 Hill (N. Y.) 311 ; *Castle* v. *Bullard,* 23 How. 172 ; *Hathorne* v. *Hodges,* 28 N. Y. 486.

MORTON, J. In this action the plaintiffs, having sold and delivered certain goods to the defendant, seek to rescind the sale upon the ground of fraud. They rely upon two grounds : first, that the defendant obtained the goods by false and fraudulent representations as to his pecuniary condition ; and second, that he obtained them intending at the time not to pay for them. The representations alleged to have been made by the defendant were, that he had a capital of $6000 over and above his liabilities, that he had no overdue accounts unpaid, and was owing little borrowed money. At the trial, the presiding judge admitted testimony that at or about the time of the purchases of the plaintiffs, the defendant made the same and also other representations, to other persons, which were false and fraudulent. The principal question upon this bill of exceptions is as to the competency of this testimony. As we have seen, there were two issues before the jury ; although they decided the case upon the issue of false representations, yet at the time of the ruling both issues were pending, and if the testimony was competent upon either, it was rightly admitted.

We think it is clear that, upon the issue whether the defendant made the alleged representations to the plaintiffs, the evidence admitted was incompetent. The fact that a defendant has com

mitted a similar but distinct crime or fraud is not competent to prove that he committed the particular crime or fraud with which he is charged. It has no tendency to prove the proposition to be established by the plaintiffs, but is equally consistent with an affirmative or negative decision of that proposition. The effect of such proof may be to produce such a state of mind in the jury to whom it is addressed, that a less weight of testimony satisfies them than would otherwise be necessary to produce conviction, but it does not directly tend to prove or disprove the matter in dispute. The admission of such evidence would introduce a multiplicity of collateral issues, calculated to withdraw the attention of the jury from the real issue in the case; and it would operate unjustly to the defendant, as it requires him to explain his transactions with others, without any notice or opportunity for preparation.

The question whether the evidence objected to was admissible under the second issue appears from some of the authorities to be one of more difficulty. The plaintiffs' position is that the defendant obtained the goods with the intention not to pay for them. This, if proved, would authorize them to repudiate the sale. *Dow* v. *Sanborn*, 3 Allen, 181. It is obvious that the principal element involved in this issue is the intention of the defendant at the time of the transactions, and any evidence which directly tends to show such intention is competent. Therefore contemporaneous frauds committed by the defendant are admissible if they tend to prove the motive or intention which actuated the defendant in the transaction under investigation.

The cases are numerous in which this subject has been discussed. We think the true rule to be deduced from them is, that another act of fraud is admissible to prove the fraud charged only where there is evidence that the two are parts of one scheme or plan of fraud, committed in pursuance of a common purpose.

In *Lynde* v. *McGregor*, 13 Allen, 172, subsequent fraudulent conveyances were admitted to show that a prior conveyance between the same parties was fraudulent; but the court put it upon the ground that, upon the whole evidence, they appeared to be parts of one transaction, executed with a common fraudulent in-

tent. In *Taylor* v. *Robinson*, 2 Allen, 562, the question was whether a deed to the defendant was fraudulent as to the grantor's creditors, and evidence was admitted that the grantor on the same day conveyed all her real and personal estate to her relatives, as tending to show a common fraudulent intent in all the conveyances.

In *Williams* v. *Robbins*, 15 Gray, 590, the plaintiff sought to impeach a deed to the defendants as being fraudulent as against the grantor's creditors. Evidence of a transfer of the personal property of the grantor to the defendants with intent to defraud his creditors, made three months after the deed, was excluded, on the ground that no connection between the two transactions was shown. Merrick, J., says : " The authorities referred to by the counsel for the defendants fully sustain the proposition that a transaction proposed to be proved for the purpose of invalidating a conveyance, which is the subject of controversy, on the ground of fraud, must be shown to be so connected with it as to make it apparent that the parties had a common purpose in both, or it will not be admissible as evidence."

The case of *Wiggin* v. *Day*, 9 Gray, 97, more nearly resembles the case at bar. The action was replevin for two wagons attached by the defendant, a deputy sheriff, as the property of one Brastow. The plaintiff, as evidence that Brastow bought the wagons with the intent not to pay for them, was permitted to show that about the time of this sale Brastow was insolvent, and purchased large amounts of personal property of third persons and got them into his hands by fraud, and then secreted them in various places. This evidence was admissible under the rule stated in the cases above cited. The secreting the goods was a very significant fact, and, in connection with the other evidence, tended strongly to prove a general scheme of fraud, of which the purchase of the wagons was a part.

In *Rowley* v. *Bigelow*, 12 Pick. 307, the plaintiffs alleged that one Martin, an insolvent person, had fraudulently obtained possession of the goods in controversy by pretending to purchase them for cash. Evidence was admitted " that Martin had made similar purchases " of others " about the same time, and under

circumstances tending to show that he was insolvent and that he knew it, and had no reasonable expectation of paying for the merchandise according to his contract." What those circumstances were does not appear in the report of the case. The court held the evidence competent upon the ground that it had a direct tendency to show that Martin was insolvent, knew he was insolvent and did not expect or intend to pay for the goods purchased, and thus had a direct bearing upon the issues involved in the case. It cannot be regarded as an authority for the proposition that it is competent in proof of an alleged fraud to give evidence of a distinct act of fraud, not part of one scheme, and not connected in design.

We think the result of the authorities is, as stated in substance in *Williams* v. *Robbins, ubi supra,* that the transaction proposed to be proved for the purpose of showing the fraud which is the subject of controversy, must be shown by some evidence, direct or circumstantial, to be so connected with it as to make it apparent that the defendant had a common purpose in both ; but if the transaction is distinct and with no connection of design, it is not admissible. Testing the case at bar by this rule, we are of opinion that the evidence of other false representations made by the defendant about the time when he purchased the goods of the plaintiffs was inadmissible. There is no evidence showing any connection between the alleged fraud practised on the plaintiffs and the other transactions. These transactions appear to have been purchases in the usual course of the defendant's business.

The mere fact that an insolvent trader makes misstatements as to his pecuniary condition does not justify the inference that he has formed a general scheme to cheat, and there was no evidence of any suspicious disposition of his property, by concealment or preferring favored creditors, or otherwise, which tended to show such scheme. There was nothing in the nature of the acts nor in independent testimony showing a connection between the transactions. The evidence of these distinct transactions, therefore, was not competent.

· We cannot agree with the argument of the plaintiffs that this exception becomes immaterial because the jury found for the

plaintiffs upon the issue of false representations. The evidence was calculated to prejudice the jury against the defendant upon this issue, and its admission affords a sufficient reason for a new trial.

The other exceptions may be briefly considered. One of the issues involved was the insolvency of the defendant before and at the time of his purchases. It was competent to show what money he had in the bank at those times. For this purpose the books of the bank, supported by the oath of the bookkeeper, were admissible. *Briggs* v. *Rafferty*, 14 Gray, 525. *Adams* v. *Coulliard*, 102 Mass. 167. The defendant agreed that the transcript from the books might be used in the same manner as the books themselves could be. The jury were rightly allowed to read it.

We express no opinion upon the question whether the record of the district court was admissible under the circumstances of the case, as the circumstances may be different upon another trial.

We are of opinion that the defendant has no ground of exception to the admission of the testimony of the expert who had examined his books and schedules. The witness was not allowed to state deductions and inferences of his own judgment, but merely results of computations, and his testimony was admissible in the discretion of the presiding judge. *Boston & Worcester Railroad Co.* v. *Dana*, 1 Gray, 83. *Exceptions sustained.*