### COMMONWEALTH *vs.* HENRY JACKSON.

Suffolk.   Nov. 21, 1881. — Jan. 4, 1882.   MORTON, ENDICOTT & ALLEN, JJ., absent.

A false statement by the seller, in the negotiations for the sale of a horse, that he is "sound and kind," if made as a representation of a fact, and known to the seller to be false, is a false pretence, within the Gen. Sts. *c.* 161, § 54.

At the trial of an indictment, under the Gen. Sts. *c.* 161, § 54, for obtaining the property of another by false pretences in the sale of a horse, evidence of similar pretences made by the defendant in sales to other persons a short time previously to the sale in question is inadmissible for the purpose of showing the intent with which the defendant made the sale of the horse.

DEVENS, J.   The defendant was indicted under the Gen. Sts. *c.* 161, § 54, for falsely pretending and asserting to one John A. Parker that a certain horse was sound and kind, with the knowledge that such assertion was false, and with intent to defraud the said Parker by inducing him to part with his money and other valuable property; and for actually so defrauding him.

A statement, in the negotiations for a sale, that a horse is sound and kind, may be a mere affirmation or expression of opinion, and may thus come under what is sometimes designated as "dealer's talk," and be treated as only the mere language of commendation by which the seller seeks to enhance the price of his goods.   It may be also the assertion of a fact material to the negotiation, which the seller may properly make, if justified in so doing by his knowledge of the animal, as the basis on which the sale is to be made.   When so made and intended, if it be false, and known to him to be so, the seller is guilty of the offence denounced by the statute, if he thereby induces the buyer to part with his property.   The distinction was clearly pointed out to the jury, who were instructed to determine whether the statement made by the defendant was of the one or the other class.   The instruction requested by the defendant, that the representation that the horse was "sound and kind" was not within the statute, would have required the court to hold that no statement as to the soundness or kindness of a horse, when falsely made and with full knowledge of its falsity, could be legally a false pretence.   The health and the temper of an

animal are as much matters of fact as its size or its color. They are not so readily ascertained, as they can only be known by more acquaintance with it than inspection affords. They are therefore subjects upon which the buyer must trust largely to the seller. Assertions of fact in relation to them are often most effective in concluding a sale, and when made falsely, and with knowledge that they are so, they are false pretences. *State* v. *Mills,* 17 Maine, 211. *State* v. *Stanley,* 64 Maine, 157. *Regina* v. *Kenrick,* 5 Q. B. 49.

The next inquiry seems to present more serious difficulty. At the trial, the sale to John A. Parker, which was the subject of the indictment, having been made on May 10, 1880, the government was permitted to offer in evidence the circumstances and details of three other sales made respectively to George J. Hoyt on April 26, 1880, to Charles H. Parker on April 6, 1880, and to one Shepard Bowles on March 29, 1880. In all three instances the evidence tended to show that the parties had been induced to enter into negotiations with the defendant by means of advertisements in a Boston newspaper of the different horses which afterwards became the subject of the sales. The representations and assertions made by the defendant, both by these advertisements and orally, as to these horses, were also put in evidence, and the parties to such sales were permitted to testify that the pretences made by the defendant at each of these sales, as to both soundness and kindness of the horses and in other respects which were the subjects of them, were false. Evidence of these transactions was admitted, against the objection of the defendant, and "solely for the purpose of showing the intent with which the defendant made the sale of the horse to Parker, as charged in the indictment." In the instructions to the jury the evidence was limited to this purpose.

It is not in general competent to show a distinct crime committed by the defendant for the purpose of proving that he is guilty of the crime charged. *Jordan* v. *Osgood,* 109 Mass. 457. But as in all crimes, except a few statutory offences, a criminal intent is necessary to be proved, evidence which legitimately bears upon this may be put in, even if it be derived from circumstances which also show the commission of another offence.

The admission of evidence, in a trial for uttering counterfeit bills or base coin, of the utterance of similar bills or coin to other persons about the same time, is well established in England and America, and fully recognized in the courts of this State; *Commonwealth* v. *Stone*, 4 Met. 43; *Commonwealth* v. *Bigelow*, 8 Met. 235; although it is said by Chief Justice Shaw in *Commonwealth* v. *Stone*, *ubi supra*, to be an exception to the general rules of evidence. So far as the admission of such testimony "may be deemed a departure from the technical rules of evidence," it is said by Mr. Justice Hubbard, in *Commonwealth* v. *Bigelow*, *ubi supra*, "it is a departure justified by the peculiar nature of the crime of passing counterfeit money." The criminal intent may frequently be inferred from the act done, but it is a matter of common experience that a base coin or counterfeit bill is often passed innocently. It is important, therefore, to show a guilty knowledge of their character on the part of the person uttering them, in order to lay the foundation of a just inference of crime against him. His knowledge of the thing uttered is shown by his familiarity with it, as shown by his use of it or similar instruments on former occasions. It is the knowledge which it may be inferred he must have derived from other transactions, and not the intent that the defendant had in other transactions, that renders the evidence admissible, as affording just ground for inference against him as to intent in the matter under examination.

For the same purpose of showing guilty knowledge in a class of cognate cases, where false plate or jewelry has been sold, evidence of other sales of similar ware is admissible. *Regina* v. *Francis*, L. R. 2 C. C. 128. *Regina* v. *Roebuck*, Dearsly & Bell, 24.

Another exception to the general rule that independent crimes cannot be proved, is found in that class of cases where acts are shown to have been done as part of the same plan or scheme of fraud. *Jordan* v. *Osgood, ubi supra*. Where an act is shown to have been done by a party entrusted with money, and the inquiry is whether it was an act of embezzlement, other acts in the conduct of the same business are admissible as showing his criminal intent. *Rex* v. *Ellis*, 6 B. & C. 145. *Commonwealth* v. *Tuckerman*, 10 Gray, 173. *Commonwealth* v. *Shepard*, 1 Allen, 575. *Regina* v. *Richardson*, 2 F. & F. 343.

So where there is evidence of a conspiracy between the defendant and a deputy collector to defraud the revenue, by entering goods at an undervaluation, evidence of other transactions in the conduct of the criminal enterprise is admissible. *Bottomley* v. *United States*, 1 Story, 135. Where a conspiracy to defraud is alleged, other fraudulent purchases than those set out in the indictment, made about the same time and in pursuance of the conspiracy, are admissible for the purpose of showing the intent with which the goods were purchased. *Commonwealth* v. *Eastman*, 1 Cush. 189. *Rex* v. *Roberts*, 1 Camp. 399. In this class of cases the acts done are connected by unity of plan and motive, and therefore bear upon the purpose, the criminality of which is in question.

Evidence has also been held admissible of other transactions, where previous attempts have been made unsuccessfully to commit the same crime. So where it is important to show a motive peculiar to himself on the part of a defendant which might have incited him to the commission of an act charged. *Commonwealth* v. *Bradford*, 126 Mass. 42. *Commonwealth* v. *Abbott*, 130 Mass. 472. The previous act here indicates a then existing purpose, which may be presumed to continue. Thus, where one was indicted for burning a building with intent to defraud an insurance company, previous attempts to burn the same building were permitted to be shown. *Commonwealth* v. *McCarty*, 119 Mass. 354. *Commonwealth* v. *Bradford, ubi supra.* Where it is important to show the relation of parties to each other, such evidence has also been admitted. Thus evidence of former familiarities is admissible to corroborate other evidence tending to show a commission of the act of adultery at a particular time. *Commonwealth* v. *Merriam*, 14 Pick. 518. *State* v. *Wallace*, 9 N. H. 515. *Thayer* v. *Thayer*, 101 Mass. 111.

The evidence here admitted as to the three other distinct fraudulent sales does not appear to come within any of the exceptions to the general rule that limits the trial to the immediate act for which the defendant is indicted. No instrument was used like the base coin or false plate, which might have been uttered innocently, and of which a guilty knowledge was important to be shown. The other statements made by the defendant at other times as to other animals might have been false, while

these were not.   The transactions formed no part of a single scheme or plan, any more than the various robberies of a thief. They were entered upon as from time to time he might succeed in entrapping credulous or unwary persons.   Even if they were transactions of the same general character, they differed in all their details, and the defendant was compelled to defend himself against three distinct charges in addition to the one for which alone he was indicted.   Evidence of the commission of other crimes by a defendant may deeply prejudice him with the jury, while it does not legally bear upon his case.   It certainly would not be competent, in order to show the intent with which one entered a house or took an article of personal property, that he had committed a burglary or larceny at another time.   *Regina* v. *Oddy*, 5 Cox C. C. 210.   *Barton* v. *State*, 18 Ohio, 221. Where one was on trial for breaking and entering the City Hall of Charlestown, it was held that it was not competent for the government to prove that among the burglarious tools and implements found upon him there was the ward of a key made and fitted for entering the building of the Lancaster Bank, upon the ground that this evidence had relation to a distinct and independent transaction.   *Commonwealth* v. *Wilson*, 2 Cush. 590.

The case of *Commonwealth* v. *Turner*, 3 Met. 19, does not sanction the admission of the evidence received in the present case. The defendant was there indicted for kidnapping a colored boy on the 12th of September, and evidence was held admissible of his conduct and declarations as to another boy on the day previous, as tending to show the intent with which he obtained possession of the boy whom he was indicted for kidnapping. The conduct and declarations of the prisoner thus immediately made before the crime of which he was accused showed his preparation therefor, although another than the boy originally intended became its victim.

The objections to the admission of evidence as to other transactions, whether amounting to indictable crimes or not, are very apparent.   Such evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defence, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it; and, by showing the defendant to have been a knave on other occasions,

creates a prejudice which may cause injustice to be done him. It is a well-settled rule of the criminal law, that the general character of a defendant cannot be shown to be bad, unless he shall first himself attempt to prove it otherwise. It ought not to be assailed indirectly by proof of misconduct in other transactions, even of a similar description. *State* v. *Lapage*, 57 N. H. 245.

It may well be doubted whether the exceptions to the general rule of law ought to be further extended. In *Regina* v. *Oddy*, *ubi supra*, Lord Campbell remarks as to the reception of evidence of other occasions where base coin or counterfeit bills are charged to have been knowingly uttered, "I have always thought that those decisions go a great way, and I am by no means inclined to apply them to the criminal law generally."

The question before us was considered in *Regina* v. *Holt*, 8 Cox C. C. 411. The prisoner was there charged with obtaining a specific sum of money from one Hirst by false pretences. It appeared that he was employed by his master to take orders, but not to receive moneys, and indeed was forbidden so to do, and he was proved to have obtained the sum from Hirst by representing that he was authorized by his master to receive it. Evidence was then admitted of his having, within a week from the above obtaining, obtained another sum of money from another person by a similar false pretence, such obtaining not being in any way mentioned in the indictment. It was held, in the Court of Criminal Appeals, that such evidence was not admissible for the purpose of proving the intent of the prisoner when he committed the act charged in the indictment, and that the conviction must be quashed.

Notwithstanding the careful limitation with which the evidence of the three other transactions by the defendant was received, we are of opinion that the learned judge erred in admitting it, and there must be a new trial.

*Exceptions sustained.*

*G. R. Swasey*, for the defendant.

*G. Marston*, Attorney General, for the Commonwealth.