## COMMONWEALTH *vs.* CHARLES L. BLOOD & another.

Suffolk.　March 29. — May 7, 1886.　W. ALLEN & HOLMES, JJ., absent.

An indictment on the Pub. Sts. *c.* 203, § 59, for obtaining money by false pretences, in the sale of an interest in a partnership formed for medical purposes, alleged, as the false pretences, that a certain business in which the defendant was engaged was a business of great value, profit, extent, and respectability; that certain pictures on the walls of the defendant's office were the property of the defendant and belonged to the business; that the defendant owned a secret formula, by which a remedy for a certain disease was compounded, which was perfectly safe and harmless in its application; that one of the partners was a skilful physician, in good and regular standing, and able to apply said remedy, and prescribe for every case of disease which might come into the office; that a certain remedy and appliance was a complete battery, and was patented by the defendant; that said appliance had been sold by the defendant in large quantities and at a great profit; that the defendant's interest in the business was of a certain value; and that one of the then partners had paid a certain sum for his interest. *Held,* that a motion to quash the indictment on the ground that the pretences set forth were not within the statute was properly overruled.

If there is any evidence in support of an allegation in an indictment, there is no variance between the allegation and the proof, although the evidence is contradictory; and, if the question of variance is submitted to the jury under proper instructions, the defendant has no ground of exception.

If A. and B. are jointly indicted for obtaining money by false pretences, and are tried together, B. has no ground of exception to the admission in evidence of a representation made by A. or by a third person, if the jury are instructed that they are not to regard it as evidence against B.

At the trial of an indictment against a person charged with committing a certain crime, letters written by him tending to show that he committed the crime are admissible in evidence against him, although they also tend to show that he committed other crimes.

At the trial of an indictment against two persons for obtaining money by false pretences, letters of one of the defendants to the other, which tended to prove the offence charged, were admitted for this purpose. They also tended to show a scheme between the defendants to obtain large sums of money by fraud, of which the offence which was the subject of the indictment was a part. The jury were instructed that the evidence as to other transactions was not evidence of the commission of the offence charged, and was not directly evidence of the fraudulent purpose in the case under consideration, but was competent on the question of fraudulent intent, so far as it tended to show that there was one scheme of fraud of which the transaction in question was a part; that it was competent to establish the fraudulent character of the scheme; but that to establish this was not conclusive of the fraudulent character of the transaction in question; that it still remained to show that this transaction was a part of the scheme and shared its fraudulent purpose; and that the real issue was the fraudulent character of the transaction in question, and not that of any other transaction. *Held,* that the defendant had no ground of exception.

At the trial of an indictment for obtaining money by false pretences with the view of effecting the sale of the defendant's interest in a partnership, the defendant

offered in evidence the articles of copartnership previously entered into by him, and the lease of certain rooms where the business was carried on. *Held*, that the evidence was inadmissible.

At the trial of an indictment for obtaining money of A. by false pretences, the bill of exceptions stated that evidence offered by the defendant was excluded, namely, that one B., a lawyer, said to the witness that, if the defendant did not pay a certain sum, B. and A. would not rest until the defendant was in prison, but failed to show that B. was acting as the agent of A. in making the threat. *Held*, that the defendant had no ground of exception to the exclusion of the evidence.

INDICTMENT, on the Pub. Sts. *c.* 203, § 59, against Charles L. Blood and John H. Evans, for obtaining money by false pretences, on November 30, 1881, " with the view and intent to effect the sale to one Francis M. Andrews, of his, said Blood's, interest and share " in a certain business in Boston.

The pretences set out in the indictment, so far as they were relied upon by the government at the trial, were as follows :

1. " That a certain business in which said Blood and Evans and one Frank A. Waterman were then and there interested and engaged, and in which each had an interest and share, was a business of great value, profit, extent, and respectability."

2. " That the pictures, prints, engravings, and paintings there hanging upon the walls of said offices and rooms [certain offices and rooms on Winter Street, Boston] were the property then and there of them, said Blood, Evans, and Waterman, and belonged to said business."

3. " That he, said Blood, then owned and controlled the secret formula by which said remedy [a remedy for the disease commonly called piles] was compounded, for the United States ; that said remedy was perfectly safe and harmless in its application for said disease."

4. " That said Evans was then and there a skilful physician in good and regular standing, and able and competent to apply said pile remedy, and to properly attend to and prescribe for any and every case of disease which might then and thereafter come into said office."

5. " That one of said Blood's remedies and appliances, then and there called an electric coil, was a complete and perfect battery, and had theretofore been duly patented by him, said Blood, and that such patent thereon was then and there duly owned by him, said Blood."

6. "That said coil had theretofore been sold by him, said Blood, in large quantities and at great profit."

7. "That said coil was then and there having large sales, and was then and there the sole invention of him, said Blood."

8. "That said Blood's one-third interest and share in said business in said Boston in said books, medicines, remedies, appli- ances, and in the office and its furnishings there as aforesaid, was of the value of twenty-five hundred and seventy-five dollars; that said Evans had theretofore paid twenty-five hundred and seventy-five dollars for one-third interest and share in the same."

In the Superior Court, before the jury were empanelled, the defendant Blood moved to quash the indictment, on the ground that the pretences set forth were not within the statute. *Mason,* J., overruled the motion ; and the defendant Blood excepted.

The defendants were then tried together, and found guilty ; and the defendant Blood alleged exceptions, which appear in the opinion.

*J. L. Eldridge,* for the defendant.

*E. J. Sherman,* Attorney General, for the Commonwealth.

GARDNER, J.    The motion to quash the indictment was properly overruled.

When the evidence in the case was closed, the government elected to proceed to the jury upon the false pretences numbered one to eight in the indictment, and no other false pretences were considered.    The defendant Blood requested the court to rule that the evidence did not support the several false pretences, and that there was a variance between the allegations and proof, which rulings were refused.

An examination of all the evidence reported in the bill of exceptions shows that it tended to prove the charges made in the indictment.    It related to each one of the false pretences alleged; and whether it was sufficient to prove them all was a question of fact for the jury to determine.

The defendant Blood asked the court to rule that the evidence did not prove the falsity of the pretences alleged.    There was evidence presented tending to show their falsity, and the court submitted the question to the jury with great clearness.

The defendant Blood contends that there was a variance between the allegation and proof, as to the amount paid in by

Evans, as set forth in the eighth pretence of the indictment. The court specially called the attention of the jury to this alleged variance, and instructed them, in substance, that the government must prove the alleged false pretence as charged, and if the proof was that Evans had paid for his share of the business $2000, instead of $2500, the charge could not be sustained.

The defendant Blood further contends that there was a variance between the indictment and the evidence, with reference to the transaction in which the false pretences were made. The indictment alleges that after Andrews paid the money and notes to Blood, he received in exchange therefor Blood's "interest in said business, and in all the property hereinafter described, and to take the place of him, said Blood, in said business." This transaction, the defendant contends, was a sale of an interest in the alleged business, made by and for the three persons then engaged in the same. He relies, in support of this proposition, upon the receipt and agreement signed by Evans, Waterman, and Andrews, dated November 30, 1881, and delivered to Blood. The government argues that this writing in no wise affected the sale consummated by the payment of the money by Andrews to Blood; that the sale was complete before this writing was executed, and that, before the absolute sale, there was no reference to the writing; that it was not the intention of the parties that such an agreement should be drawn up, or that the sale should be incomplete until such an instrument was executed. The evidence was ample to support the government in its claim. The court submitted this question to the jury, and instructed them that, if they found the facts to be as claimed by the defendant Blood, there would be a variance.

Waterman, called as a witness, was permitted to testify to an interview with the defendant Evans, as to the circumstances of his buying an interest in the business. The defendant Blood objected to this testimony, but the court admitted it, as against the defendant Evans, stating that the transaction could not be evidence against Blood, and afterwards fully instructed the jury as to the bearing and effect of the evidence. Whatever grievance Evans may have had, it is clear that Blood received no injury from the evidence introduced.

Several letters written by the defendant Blood to the defendant Evans were put in evidence by the government, upon the cross-examination of the defendant Evans as a witness, under the objection of Blood. Some of the letters have reference to the transaction with Andrews. The government could show the entire history of the fraud perpetrated on Andrews, from the conception of the scheme by the defendants, to its consummation. This evidence by the letters was competent, as tending to prove the offence charged. If they also disclose the fact that other similar crimes had been committed, or that attempts had been made to commit them, this does not render the letters incompetent. *Commonwealth* v. *Choate,* 105 Mass. 451. *Commonwealth* v. *Scott,* 123 Mass. 222. They disclose a scheme between the defendants to obtain large sums of money by fraud. It is apparent from the letters that the defendants had combined to carry out the fraudulent scheme. The general scheme was substantially the same, as appears by the evidence in this case, and develops the fact that the frauds disclosed in the letters and the crime charged in this indictment were parts of one fraudulent scheme, committed in pursuance of a common purpose. The correspondence discloses the way and manner in which the scheme was to be carried out, and was in fact carried out. They disclose a general scheme by the defendants to cheat and defraud, and the fraud practised upon Andrews was in pursuance of the general scheme of fraud developed in these letters.

The presiding judge properly refused to rule that there was no evidence of a scheme to defraud. The court instructed the jury that all the evidence as to other transactions, whether from witnesses or from the letters of the defendant Blood, " are not evidence of the commission of this offence, and they are not directly evidence of the fraudulent purpose of the representations made to Andrews ; they are only competent upon the question of fraudulent intent in this way: so far as they tend to show that there was one scheme of fraud, of which this transaction with Andrews formed a part. They are competent to establish the fraudulent character of the scheme. But to establish the fraudulent character of the scheme is not conclusive of the fraudulent character of the transaction with Andrews; it would still remain to show that the transaction with Andrews was a

part of that scheme, and shared its fraudulent purpose. The real issue for you is the fraudulent character of the transaction with Andrews, and not the fraudulent character of any other transaction."

In *Commonwealth* v. *Jackson*, 132 Mass. 16, the evidence of similar pretences made by the defendant in sales to other persons, a short time previously to the sale in question, was held to be improperly admitted for the purpose of showing the intent with which the defendant made that sale. The other sales were independent of the sale charged in the indictment, and formed no part of a single scheme or plan. In the case at bar, the evidence was not admitted for this purpose. It was introduced for another and different purpose. Having been admitted, the court undertook to instruct the jury as to its legitimate effect, and how it should be considered by them. We think the instructions were sufficiently guarded, and that they stated the principles of the law governing the evidence.

The evidence offered by Blood of articles of copartnership entered into between Evans, Waterman, and Blood, on June 29, 1881, for carrying on the business at Winter Street, was properly excluded, as immaterial to the issue ; and the evidence as to the lease of said premises was properly excluded, for the same reason.

The defendant Blood offered in evidence the deposition of one Venier, and it was read to the jury, except one interrogatory and answer, which were excluded, and which were, in substance, to the effect that one Tirrell, a lawyer, said to the witness that, if Blood did not pay Andrews or himself $2800, and return a promissory note of Andrews for $250, he and Andrews would not rest till Blood was in prison. This evidence was rightly excluded, for the reason, if for no other, that the bill of exceptions does not show that Tirrell was acting as the agent of Andrews in making the threat.          *Exceptions overruled.*