COMMONWEALTH *vs.* ANDREW M. CLANCY & another.

Suffolk.   November 30, 1904. — January 4, 1905.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Practice, Criminal,* Exceptions. *Larceny.   False Pretences.   Evidence,* Of other crimes to show intent, Presumptions and burden of proof.

Where a criminal case coming before this court on the defendant's exceptions is submitted on briefs an exception not mentioned in the defendant's brief is considered waived.

At the trial of an indictment for larceny, consisting of the alleged fraudulent sale of a business at an amount grossly in excess of its value by means of false pretences, evidence, that the sales of goods after the transfer of the business immediately were much less than they had been represented to be, is admissible to show that the representations as to the amount of the business before the transfer were false, as it is not to be expected that an established business will diminish seriously at once without some good reason.

At the trial of an indictment of two defendants for larceny, consisting of the alleged fraudulent sale of a business to a certain person at an amount grossly in excess of its value by means of false pretences, if the evidence discloses a general conspiracy between the two defendants to cheat whomever they could by selling out a pretended business for cash by means of false representations, evidence of the acts of either or both of the defendants in deceiving other persons in a similar manner is admissible to show the knowledge of each of the defendants of the falsity of the representations made and of the intention of each to cheat by means of such representations.

The following instruction in regard to the presumption of the innocence of the defendants in a criminal case was held to be a correct statement of law: "The jury start with the presumption that the defendants are not guilty until the evidence satisfies you differently. But when the evidence . . . satisfies you beyond any reasonable doubt, the evidence introduced by the government and the evidence of the defendants, when you are satisfied on that evidence, that the defendants are guilty, then you should say so, otherwise you say the case is not proved and return a verdict of not guilty."

INDICTMENT, found and returned on November 7, 1903, charging the defendants with larceny in six counts, the first count charging the larceny on October 15, 1899, of $250 from Edward L. Pickard, the second count charging the larceny on October 31, 1899, of $1,950 from Edward L. Pickard, the third count charging the larceny on February 12, 1900, of $250 from Ammi B. Campbell, the fourth count charging the larceny on March 16, 1900, of $1,750 from Ammi B. Campbell, the fifth count charging the larceny on March 25, 1903, of $500 from Watson H. Brasee, and the sixth count charging the larceny on March 28, 1903, of $2,500 from Watson H. Brasee.

At the trial in the Superior Court before *Bond*, J. both of the defendants were found guilty on each count; and thereafter alleged exceptions.

*J. B. Moran & M. J. Sullivan*, for the defendants.

*F. H. Chase*, Second Assistant District Attorney, for the Commonwealth.

BARKER, J.   The trial was upon an indictment in six counts charging the defendants with the commission of larcenies by securing money from three different persons by false pretences, namely, from one Pickard in October, 1899, from one Campbell in February and March, 1900, and from one Brasee in March, 1903.   The general nature of the false pretences charged was concerning the value of a business upon the sale of which the money was paid.   The case is here upon a bill of exceptions of which some relate to evidence and others to the charge to the jury and to the refusal of requests for instructions.   The case having been submitted upon briefs, and that of the defendants containing no statement in regard to their exceptions as to evidence we consider those exceptions as waived.   The false pretences relied on to show that the getting of the money from Pickard in October, 1899, was a larceny were, in short, representations that Clancy then was the owner of a certain business the weekly cash receipts of which amounted to $800; that Murphy had been trying to buy the business and that Clancy had been unwilling to sell until then; that Clancy's price was $5,000 ; that Murphy had $2,500 to put into the business ; that Clancy desired to retire because he had made money enough there, was too old and had outside interests ; that it was strictly

a cash business; that the sales averaged $800 a week or more, and that the profit on sales was at least twenty-five per cent; that the sales for the week ending October 14, 1899, amounted to nearly $800; that there were then on hand about $1,200 worth of groceries and from $300 to $500 worth of meats; that the fixtures had cost and were then worth about $1,000; that Clancy had worked up the business by years of hard work; that Murphy knew Clancy only as a customer of Murphy's; that Murphy then did a wholesale provision business, and that Clancy was a good customer of his, and had bought nearly all the meat for Clancy's store of Murphy for several years.

The evidence tended to show that by means of these false pretences Clancy and Murphy in confederation with each other cheated Pickard out of his money in this way. Murphy got in communication with Pickard by, means of an advertisement which Murphy inserted in a newspaper giving notice that there was " Wanted, a good honest man with $2,500 to join with me in purchasing a good grocery and provision store " and making other representations in the line of the false pretences charged. Pickard then was induced to join with Murphy in buying the business from Clancy, Pickard paying his half of the price in cash and Murphy falsely pretending to pay his half also, and Pickard and Murphy. after the business was turned over to them going on with it for a short time. It at once was found that the receipts were but little, the stock of goods much smaller than had been represented, and that the business was practically worth nothing. Thereupon Murphy declared that they had been cheated and that the only way out was to sell it back to Clancy for what he might be willing to pay, and it was so resold for the sum of $550.

The false pretences charged to have been made to Campbell to induce him to pay out his money in February and March, 1900, related to the same business then being carried on by Clancy in the same store. They were of the same general kind as those made to Pickard, and the steps of the cheat from the newspaper advertisement to the resale to Clancy were upon the same model as those by which Pickard had been defrauded.

The transactions with Brasee in March, 1903, were also the sale of a business for an exorbitant price, which Brasee was in-

duced to pay by false pretences, and its resale upon the discovery by the purchaser that he had been cheated. But this time the business was located at a different place and was represented to be a wholesale meat and produce business carried on by Clancy and Murphy as partners for seven years and in which Murphy before he became a partner had been employed by Clancy. Again the scheme began with a newspaper advertisement beginning this time as follows: " $3000. For sale. Retiring partner's interest in a wholesale and produce business." This time Clancy posed as the retiring partner who had taken Murphy into his employment as a boy. There was a sale of Clancy's interest for $2,000, and a speedy demonstration that the purchaser had been cheated. In this instance the finale varied, Clancy, under compulsion, repaying $2,000 to the purchaser. In this instance the pretence was that the business never had been less than $55,000 a year, and the profit never less than $4,000 a year, and that the sales for the first week of March, 1903, had been $990, for the next week $1,030, and for the third $1,014.

1. The first exception argued upon the defendants' brief is to the refusal of the judge to instruct the jury that the fact that the business while conducted by the purchaser after he took possession did not bring in as much money daily, weekly or monthly as the defendants had stated it did up to the time of the sale was no evidence that the defendants' statement of what it brought in was false.

The judge instructed the jury that it would not follow as a matter of course that the previous sales had not been so much as represented because for the next week or two after the sale they had been less, but allowed the jury to take into consideration the fact that they were less immediately after the sale, upon the question whether the amount of sales previous to the transfer had been represented falsely, saying to them that if the falling off was accounted for or explained by the conduct of the purchaser or any other circumstances they were not to draw any inference that the sales before the transfer were not as represented. We think the request was refused rightly. The whole matter was one to be dealt with by the jury in applying to the question their knowledge and experience. In the usual course of events it is not to be expected that an established business of

the kind in question will at once seriously diminish without some good cause. Its sale with the good will gives reason to expect that its volume will be at first at least substantially unchanged. Whether it was so in these instances was a question of fact for the jury, and if the volume of business was substantially unchanged it was a fair inference that the representations that it had been very much larger up to the transfer were false.

2. The next exception is to the refusal to give this request. " The defendant's innocence or guilt is to be determined as to each count separately, and in considering the Pickard transaction the jury must not draw inferences as to it from the evidence as to the other transactions. And so as to each of the other transactions."

We are of the opinion that the evidence stated in the bill of exceptions justifies the conclusion that before the false pretences had been made to Pickard the defendants had entered into a general conspiracy to cheat by means of selling out for cash an interest in some business which by false representations they should induce some purchaser to believe to be established and prosperous and 'to belong to one or both of the defendants and in which one of the defendants should continue to be interested with the purchaser with a view to cheat him further when he should discover that he had been cheated into making his purchase, and that all three of the transactions charged in the indictment were cheats perpetrated by the defendants in the execution of this conspiracy. This aspect of the case was dealt with in the charge and the jury were told that such a conspiracy could be proved by circumstantial evidence, and that upon the question whether such a conspiracy existed they could consider all the evidence in the case. This instruction was right. *Commonwealth* v. *Smith*, 163 Mass. 411, 418. If the jury should find that the defendants had formed and acted throughout in pursuance of such a conspiracy the acts of either or both in any one of the three transactions were relevant, certainly upon the question of the knowledge of each of the falsity of the representations made and of the intention of each to cheat each purchaser by means of them. *Commonwealth* v. *Blood*, 141 Mass. 571. *Commonwealth* v. *White*, 145 Mass. 392, 395. *Commonwealth* v.

*Robinson*, 146 Mass. 571, 577.   *Commonwealth* v. *Smith*, 163 Mass. 411, 418.   *Commonwealth* v. *Lubinsky*, 182 Mass. 142.

The distinction between the present case and that of *Commonwealth* v. *Jackson*, 132 Mass. 16, cited by the defendants, where evidence of other sales was held to have been admitted improperly for the purpose of showing the intent with which the sale charged in the indictment was made, is that there Jackson was acting alone, and the sales were independent transactions, although all were managed similarly.   Here there was evidence of a conspiracy and that each of the three transactions were included in its general purpose.   For this reason the instruction requested was refused rightly.

3.  The remaining exception is to the refusal to give in terms the following request: " The defendant is presumed to be innocent, and all evidence against him must be weighed with this presumption in the minds of the jurors from the beginning of the trial to the moment that the jury concludes, if it does so conclude, that the defendant is guilty."

While not given in terms the substance of the request was given in the charge.   The jury were reminded that they had been told over and over again that they ought not to start with the idea that the finding of the indictment or any previous investigation of the case was evidence of guilt.   They were told that none of the proceedings prior to the time when the defendants came before them were to be considered in any way as showing guilt, and that " the jury start with the presumption that the defendants are not guilty until the evidence satisfies you differently.   But when the evidence . . . satisfies you beyond any reasonable doubt, the evidence introduced by the government and the evidence of the defendants, when you are satisfied on that evidence, that the defendants are guilty, then you should say so, otherwise you say the case is not proved and return a verdict of not guilty."

In their brief the defendants contend that the jurors' mind must be kept open and free from any conclusion until after the jury has heard all the evidence, the arguments and the charge. However that may be it is plain that no such ruling was asked for by the request.   We are of opinion that the charge dealt properly with the subject of the presumption in question.

*Exceptions overruled.*