COMMONWEALTH *vs.* CHARLES S. STUART & others.

Suffolk. November 14, 1910. — January 7, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Conspiracy. Evidence,* Declarations of deceased persons, Of other crimes, Extrinsic affecting writings. *Practice, Criminal,* Order of evidence, Exceptions. *Larceny.*

Upon the trial of an indictment of a number of defendants for a conspiracy to steal the property of divers persons, there was proved a conspiracy in the first place to lure the owners of small stores or business enterprises into parting with their property in exchange for worthless promises backed by equally worthless security, and then, after the sellers thus had been cheated, to keep them at peace and inactive until the booty acquired from them had been disposed of and the conspirators thus had been enabled to enjoy the fruits of their unlawful enter-

prise. A certain statement of one of the conspirators, who was indicted but who died before the trial, was admitted in evidence. The statement tended to show fraud on the part of the principal conspirator and was made to the witness, who was one of the persons defrauded, after the witness had transferred his store to the conspirator who made the statement to him. The principal conspirator objected to this statement being used against him on the ground that it had been made by the deceased conspirator after the transaction between him and the defrauded witness had been completed and the object of the conspiracy as to the witness had been attained. *Held*, that an exception founded on this objection must be overruled, because the acts of conspiracy continued as stated above after the property had been acquired.

Cases cited by SHELDON, J., upon the point, that at the trial of an indictment of a number of persons for a conspiracy to obtain property by fraud, the declarations of one of the conspirators are admissible against the others not present when they were made, although such declarations were made after the paramount object of the conspiracy had been attained by the fraudulent acquisition of the property, if they relate to the concealment and safe disposal of the property thus fraudulently obtained.

Whether the provision of R. L. c. 175, § 66, that a declaration of a deceased person shall not be excluded as hearsay if a trial judge finds it to have been made under the conditions required by that section, is applicable to criminal proceedings, here was mentioned as a question which had been referred to in argument but which was not presented for decision.

At the trial of an indictment of a number of persons for a conspiracy to obtain property by fraud, evidence of acts of one of the conspirators, which tend to show the intent with which he acted and the scope and character of the conspiracy into which he had entered and in furtherance of which those particular acts could be found to have been committed, is competent, and is not to be excluded because incidentally it tends to show the commission by this conspirator of other specific crimes.

At the trial of an indictment of a number of persons for a conspiracy to obtain property by fraud, evidence of the acts of persons, who are shown to have joined in the conspiracy, done in furtherance of its unlawful objects is admissible against their co-conspirators, although some of the persons who did the acts were not included in the indictment.

At the trial of an indictment of a number of persons for a conspiracy to obtain property by fraud, members of the conspiracy are competent witnesses for the Commonwealth against their co-conspirators.

If a witness testifies that certain land, of which a conveyance was obtained by fraud, was in a certain town, this is not testifying to the contents of the deed by which it was conveyed.

At the trial of an indictment of a number of persons for a conspiracy to obtain property by fraud, where the indictment charges that the defendants conspired together on a certain day in January, 1905, and a conspiracy is proved which began as early as 1901 and continued, with the addition of some new confederates, into the year 1906, fraudulent acts in furtherance of the conspiracy committed by its members in 1903 may be shown, the conspiracy being a continuing one.

The order of evidence is a matter wholly within the discretion of the presiding judge at a criminal trial as well as at a civil one, and no exception lies to the admission of any material evidence on the ground that it is offered for the first time upon the re-direct examination of a witness.

At the trial of an indictment of a number of persons for a conspiracy to obtain money by fraud, the ordinary doctrine, that false statements about the value of property by one offering it for sale or exchange are mere dealer's talk, has no application to false statements fraudulently made by one of the conspirators to a victim toward whom it could be found that he stood in a confidential relation.

A conspiracy for the attainment of an unlawful end is none the less a criminal offense because some of the means employed, although essentially dishonest, could not by themselves be made the subject of a criminal prosecution.

At the trial of an indictment of a number of persons for a conspiracy to obtain property by fraud, where the conspiracy, although charged by the indictment to have existed on a certain day, was shown by the evidence to have been a continuing conspiracy extending over a period of five years, the Commonwealth may show the whole history of the conspiracy from its beginning to its consummation, including the preparations for the conspiracy made by the chief conspirator.

Under R. L. c. 208, § 26, an indictment for larceny of the property of a certain person may be sustained by showing that the defendant obtained money from the alleged victim in payment for a supposed half interest in another person's pretended business by means of false representations as to the extent and profits of the business, especially where this is shown to have been done as part of a general scheme to defraud.

Where, in carrying out an unlawful conspiracy for obtaining property by fraud, the conspirators incidentally commit other crimes, the indictable offense of conspiracy is not merged in the subsequent specific crimes, although these may be felonies while conspiracy is only a misdemeanor.

INDICTMENT, found and returned on August 10, 1907, originally in fourteen counts, charging in the first count that Charles S. Stuart and twelve other defendants named had joined in a general conspiracy to steal the property of divers persons, and in the other counts charging them with the larceny of certain property of the persons therein named.

The case was tried before *Bond,* J. Before the jury were impanelled the defendant Charles S. Stuart filed a motion to quash the indictment. Thereupon the district attorney *nol prossed* all the counts except the first and the tenth, and the judge denied the defendant Charles S. Stuart's motion to quash, subject to that defendant's exception.

The case then went to trial against the defendant Charles S. Stuart and certain others of the defendants upon the first and the tenth counts.

The first count alleged that the defendants " on the tenth day of January in the year of our Lord one thousand nine hundred and five, at Boston aforesaid, conspired together to steal the property, moneys, goods and chattels of divers persons whose

names and a more particular · description of whom are to said grand jurors unknown."

The tenth count alleged that the defendants " on the ninth day of October in the year of our Lord one thousand nine hundred and six at Boston aforesaid, money of the amount and of the value in all of one hundred dollars, of the property, goods and chattels of one Chester B. Turner in his possession then and there being, did then and there feloniously steal, take and carry away."

The jury returned a verdict of guilty on the first count against the defendant Charles S. Stuart and all the other defendants that were being tried except two, and on the tenth count returned a verdict of guilty against the defendant Charles S. Stuart and one other defendant, William A. Sweatt. The defendant Charles S. Stuart alone alleged exceptions, raising certain questions, of which those that were argued are stated in the opinion.

*T. W. Proctor*, for the defendant Charles S. Stuart.

*M. J. Dwyer*, Assistant District Attorney, for the Commonwealth.

SHELDON, J. 1. As the district attorney entered a *nol pros* upon all but the first and tenth counts of the indictment, the defendant's motion to quash has not been argued, and need not be considered.

Several exceptions were taken by this defendant to the admission of evidence. We discuss those which have been argued by his counsel.

2. The government contended that one White, the owner of a small grocery, had been induced to sell his store and business to Gaffney, one of the conspirators, and to take as security for the price thereof a second mortgage upon property in Holliston, which was represented to be of abundant value for that purpose, but which the government contended was worthless. White was permitted against the exception of the defendant to testify that after he had transferred his store to Gaffney and while Gaffney was still in possession thereof, he had a conversation with Gaffney, in which the latter said that he never had seen the Holliston property, that he had got it from Stuart, and could not tell anything about it except that it was in Holliston. There was evidence to show the existence of the conspiracy charged in

the first count of the indictment, and that both Stuart and Gaffney, as well as others, were parties thereto.

The defendant concedes that the acts and declarations of one conspirator, made in pursuance of the common object while the conspiracy is still pending, may be proved against all the conspirators; but he contends that this evidence was incompetent because the statements were made by Gaffney after the transaction with White had been completed, when the object of the conspiracy had been attained as to him, and so that they were the mere declarations of one conspirator, not a party to the trial (Gaffney, though indicted, had died before the trial took place), and were narrative statements of past events and not in any way relevant against the defendant. 1 Greenl. on Ev. § 111. Stephen's Digest of the Law of Evidence, art. 4. But this contention is based upon too narrow a view of the scope of the conspiracy which was claimed by the government and which the evidence tended to show. Its object was not simply to lure the owners of small stores or business enterprises into parting with their property in exchange for a worthless promise backed by equally worthless security; it was part of the scheme also, after the vendors had been thus cheated, to keep them at peace and inactive until the booty acquired from them had been disposed of and the conspirators had been thus enabled to enjoy the fruits of their unlawful enterprise. All the statements of Gaffney, the admission of which was excepted to, could be found to have been made while the conspiracy was still pending and in furtherance of its criminal object. Accordingly the evidence was competent. *Commonwealth* v. *Clancy*, 187 Mass. 191, 196. *Commonwealth* v. *Waterman*, 122 Mass. 43. *Commonwealth* v. *Brown*, 14 Gray, 419.

Even if the declarations had been made after the paramount object of the conspiracy had been attained, and had related merely to the concealment and safe disposal of the property which had been obtained by its execution, there is sufficient authority for saying that they might have been put in evidence against fellow conspirators not present when they were made. But we need not spend time upon this consideration, as it is merely a development of that already stated. It is enough to refer to a few of the cases in which it has been applied. *Com-*

*monwealth* v. *Scott,* 123 Mass. 222. *Commonwealth* v. *Smith,* 151 Mass. 491. *Commonwealth* v. *Devaney,* 182 Mass. 33, 35. *People* v. *Mol,* 137 Mich. 692 and 4 A. & E. Ann. Cas. 960. *State* v. *Thaden,* 43 Minn. 253. *Card* v. *State,* 109 Ind. 415. *Scott* v. *State,* 30 Ala. 503, 509. Other cases are collected in 12 Cyc. 438, 439.

3. The testimony of Lindauer as to Gaffney's other declarations made to him was competent for the same reasons.

We do not consider the question whether Gaffney's declarations could have been admitted on the ground of his having deceased before the trial. R. L. c. 175, § 66. St. 1898, c. 535. It has been doubted among the profession whether the statute is applicable to criminal proceedings. Apparently it has been assumed not to be so in the trial of an indictment for unlawfully procuring a miscarriage. *Commonwealth* v. *Bishop,* 165 Mass. 148, 152. *Commonwealth* v. *Sinclair,* 195 Mass. 100, 109. These cases were decided under R. L. c. 175, § 65. The question is not presented here, and is mentioned only because of suggestions made by counsel at the argument. It does not appear, and is not probable, that the presiding judge found these declarations of Gaffney to have been made in good faith; and this was a condition precedent to their admissibility even if otherwise competent.

4. The testimony of one Griffin as to his business relations with Stuart was competent. The jury could find that the transactions testified to were a part of the general unlawful scheme in which Stuart and his confederates were engaged. They were not, or rather the evidence indicated that they were not, independent acts of wrongdoing, as in *Commonwealth* v. *Jackson,* 132 Mass. 16. That case is explained and the rule for cases like the one at bar is stated in *Commonwealth* v. *Clancy,* 187 Mass. 191, 196, and *Commonwealth* v. *Blood,* 141 Mass. 571, 576. See also *Commonwealth* v. *Lubinsky,* 182 Mass. 142; *Commonwealth* v. *Smith,* 163 Mass. 411, 417, 418. That this evidence may have tended incidentally to show the commission by Stuart of other specific crimes is no objection to its being received for the purposes for which it was competent, to show the intent with which he acted and the scope and character of the conspiracy into which he had entered and in furtherance of which these particular acts could

be found to have been committed. Nor was it material that Griffin and Joyce were not included in the indictment. *Graff* v. *People*, 208 Ill. 312, 319. *People* v. *Smith*, 144 Ill. App. 129, 159, affirmed in 239 Ill. 91. *People* v. *Fehrenbach*, 102 Cal. 394. That Griffin was apparently a confederate of Stuart does not affect his competence as a witness. *Bean* v. *Bean*, 12 Mass. 20. Nor do we find that Griffin testified to the contents of the deed given to him. His testimony that the land was in Walpole was directed to the real location of the land, not to what was said about it on the deed.

5. For the reasons already stated, it was competent to prove the dealings of Ramsey and Nutt with Yuill. The testimony was not made too remote by the fact that it related to a transaction in 1903. The conspiracy was a continuing one. It might be found that it began as early as 1901, and continued, though with the addition of some new confederates, into 1906. The exception to the testimony of these witnesses cannot be sustained.

6. The defendant had no right of exception to the ruling that Lindauer might testify in re-direct examination that he relied on the statements of Stuart and Gaffney as to the value of the land which he had been persuaded to take as security for the price of his restaurant. The order of the evidence was wholly in the discretion of the judge. The evidence was material (*Commonwealth* v. *O'Brien*, 172 Mass. 248, 254; *Commonwealth* v. *Drew*, 153 Mass. 588, 595), because it was one of the objects of the conspiracy to palm off worthless security upon sellers by false assurances of its value. The ordinary doctrine (*Commonwealth* v. *Wood*, 142 Mass. 459; *Lynch* v. *Murphy*, 171 Mass. 307) that lies about the value of property are mere dealer's talk does not apply to a case like this, where it could be found that there were confidential relations between Stuart and the victim whom it was intended to defraud, and that the latter was persuaded to rely upon the pretended opinion of Stuart and his confederates. See *Medbury* v. *Watson*, 6 Met. 246, 260 ; *Dawe* v. *Morris*, 149 Mass. 188, 192 ; *Kilgore* v. *Bruce*, 166 Mass. 136, 138 ; *Andrews* v. *Jackson*, 168 Mass. 266 ; *Whiting* v. *Price*, 169 Mass. 576 ; *Gurney* v. *Tenney*, 197 Mass. 457, 465 ; *Rollins* v. *Quimby*, 200 Mass. 162, 164.

We may add that a conspiracy for the attainment of an un-.

lawful end is none the less a criminal offense because some of the means employed, though essentially dishonest, could not by themselves be made the subject of a criminal prosecution. *Commonwealth* v. *Althause*, 207 Mass. 32.

7. The deeds of the Walpole land from Faust to Griffin and from Griffin to Barnes were properly admitted. This land was intended to be used, it could be found, as security in the fraudulent purchases intended to be made. The deeds afforded competent evidence of acts done by two of the alleged conspirators in furtherance of the common design. Faust was one of the defendants named in the indictment. Griffin, as we have seen, could be found to have joined in the conspiracy.

8. The foreclosure of the first mortgage upon the property on which Walton had taken a second mortgage as security for the price of his restaurant was a fact competent to be proved. It tended to show that the property was exhausted in payment of the prior incumbrance, and so to support the contention of the government that the security was worthless from the beginning. The mortgagee's deed was competent to prove the fact of the foreclosure. It does not appear that the deed was allowed to be used as evidence of the truth of the recitals made therein.

9. The parts of Ferguson's testimony which were excepted to cannot be said to have been incompetent. In substance he testified that in 1901 he was made a victim of Stuart and others in a transaction which might be found to have been in furtherance of the alleged conspiracy, and to indicate that this was then under way. His testimony tended also to show that immediately after suffering himself he was induced by Stuart to join in the conspiracy and to assist in defrauding others. All this was admissible. As was said in *Commonwealth* v. *Scott*, 123 Mass. 222, 234, 235, the government had a right to show the whole history of the conspiracy from its commencement to its consummation. And see *Commonwealth* v. *Howard*, 205 Mass. 128, 148. It tended to show the preparations made by Stuart and the beginning and development of his scheme. It was like the evidence which always has been held to be competent that one charged with a crime had made preparations for its commission, or had by word or deed manifested an intention to commit that crime. *Commonwealth* v. *Snell*, 189 Mass. 12, 21. *Commonwealth* v. *Robinson*,

146 Mass. 571, 577. *Conklin* v. *Consolidated Railway*, 196 Mass. 302, 306, and cases there cited.

10. The judge was right in refusing to order an acquittal on the tenth count. There was evidence that Stuart had obtained Turner's money for a half interest in Sweatt's pretended business, by means of false representations as to the extent and profits of that business. This was enough to constitute larceny, if done with the fraudulent intent alleged by the government. R. L. c. 208, § 26. And the similar transactions with Severance, Merrow and Day, which were in evidence, could be found to have been done as parts of the same general scheme which was carried out with Turner. . *Commonwealth* v. *Lubinsky*, 182 Mass. 142. *Commonwealth* v. *Blood*, 141 Mass. 571. *Jordan* v. *Osgood*, 109 Mass. 457, 461. *Horton* v. *Weiner*, 124 Mass. 92. *Boles* v. *Merrill*, 173 Mass. 491. It is of course plain that the conduct and statements of Stuart himself in the other matters which were in evidence, if these were found to have been done in the execution of one and the same unlawful scheme, as the evidence indicated, furnished strong evidence against himself. *Commonwealth* v. *Bond*, 188 Mass. 91.

11. The offense of conspiracy was not merged in the specific crimes afterwards committed in pursuance thereof, although the conspiracy was only a misdemeanor and the subsequent crimes were felonies. *Commonwealth* v. *Walker*, 108 Mass. 309, 314. *Commonwealth* v. *Andrews*, 132 Mass. 263, 265.

We have examined all the exceptions in the case which do not appear to have been waived, and most if not all of those which have not been specifically mentioned are covered by what has been said. We discover no error in the rulings excepted to.

*Exceptions overruled.*