### TOOTLE *et al*, v. PETRIE, Sheriff.

1. To be available in this court, errors of law occurring at the trial, and excepted to, must be particularly specified; and, when the appeal is taken only from an order overruling a motion for a new trial, errors that were neither urged nor presented in a statement or bill of exceptions at the hearing of said motion will not be reviewed.

2. Where clearly conflicting evidence concerning a material issue raised by the pleadings has been submitted to a jury under proper instructions, its verdict in favor of either party upon all the issues is, for the purposes of an appeal, conclusive as to such question.

3. The action of a trial court in sustaining an objection to a preliminary question, relating to a collateral and apparently immaterial subject, must, in order to receive attention on appeal, be followed by an offer to prove the facts sought to be thereby elicited. Hanson v. Township of Red Rock, 7 S. D. 38, 63 N. W. 156.

4. Ordinarily it is not error to refuse to admit evidence of uncommunicated alleged fraudulent representations made to a stranger, and in no manner brought to the knowledge of the party seeking to rescind a sale of personal property, and regain possession thereof, upon the sole ground that defendants rendered to plaintiffs a statement of their financial condition, in which the value of the available property was overestimated, and upon which plaintiffs wholly relied.

5. A specific statement of assets and liabilities, purporting to be only approximately correct, made by retail merchants to wholesale dealers, as a basis for credit, which itemized liabilities and property included, and shows upon its face that the proposed customers are greatly involved, and doing an extensive credit business, and have included in their assets past due notes and accounts aggregating an amount greatly in excess of their purported net capital, is not sufficient, as a matter of law, to rescind a sale and delivery of goods, upon the ground of false and fraudulent representations, when it appears from the undisputed evidence that plaintiffs actually knew when the credit was extended that defendants were unable to pay their just debts as they matured in the ordinary course of business; and the fact that defendants omitted to notify plaintiffs of the pendency of a suit based upon a portion of their acknowledged indebtedness, for the alleged reason that they believed the creditor who instituted the suit never intended to reduce to judgment the subject thereof, was a circumstance to be considered by the jury, together with other evidence offered at the trial.

(Syllabus by the Court.    Opinion filed Nov. 9, 1895.)

Appeal from circuit court, Bon Homme county.   Hon. E. G. SMITH, Judge.

Action in claim and delivery.   From [an order denying a new trial, after verdict for defendant, plaintiffs appeal.   Affirmed.

The facts are stated in the opinion.

*Chase, Kean & Sherman,* (*T. H. Null,* of counsel) for appellants.

Evidence tending to show an intent on part of an insolvent purchaser to buy without paying for the goods is admissible. Jordan v. Osgood,. 109 Mass. 457; Moline–Milburn Co. v. Franklin, 33 N. W. 323; Chamberlain v. Fuller, 9 Atl. 832; Farwell v. Hanchett, 11 N. E. 875; Woolner v. Lehman, 4 S. 633; Collins v. Cooley, 14 Atl. 574; McCasker v. Enright, 24 *Id.* 249; Porter v. Stone,. 62 Ia. 442; Kelly v. Owens, 30 Pac. 596.   If a judgment is void on its face for want of jurisdiction the question may be raised at any time by anybody as against whom the judgment is sought to be interposed, as the foundation of a right or basis of a claim of right.   Borden v. Fitch, 15 John. 141; Harris v. Hardeman, 14 How. 3371; Freeman Void Jud. Sales, § 2,

*French & Orvis* and *R. J. Gamble*, for respondent.

Representations, no matter how false, made by A. to B., but not communicated to C. will not give C. a right of action against A.   Eaton v. Avery, 83 N. Y. 31; Wyman v. Wilmarth, 1 S. D. 172; South Branch Lumber Co. v. Ott, 142 U. S. 622; 35 Lawyer's Co-op. Ed. 1136.   The appellate court will not review the evidence on appeal except where a motion for new trial was made in the lower court.   Brewing Co. v. Mielenz, 5 Dak. 136; McCormock v. Phillips, 34 N. W. 62; Canfield v. Boyle, 2 Dak. 464; Bush v. Railroad, 3 *Id.* 445; French v. Lancaster, 2 *Id.* 276; Jeansch v. Lewis, 1 S. D. 613.   Where there is any legal evidence supporting the verdict it will not be set aside.   Best Brewing Co. v. Pillsbury, .5 Dak. 62; Finney v. Railroad, 3 Dak. 270; Betts v. Letcher, 46 N. W. 193; Parliman v. Young, 2 Dak. 175; Bates v. Callender, 3 *Id.* 256; Moline Plow Co. v. Gilbert, *Id.* 239.

FULLER, J.   Based upon a claim of ownership and right to immediate possession, this action is against a sheriff, in claim and delivery, to recover the possession of an invoice of merchandise sold and delivered by plaintiffs to the firm of Lavender & Spannagel, and afterwards seized and sold under an execution issued upon a judgment against said firm in favor of one Bogart, another creditor of the partnership.   It is alleged and claimed that, by reason of, and relying upon, certain false and fraudulent representations made by the firm of Lavender & Spannagel, respecting their financial condition, plaintiffs were induced to sell and deliver to said firm the property described in the complaint, and, in consequence of said financial property statement and false representations, they now claim the right to rescind the sale, and reclaim the possession of said property from the sheriff.   The defendant justified the seizure of the property under the execution, and denied the allegations of fraud.   The case was tried to a jury, and resulted in a verdict in favor of defendant and against plaintiffs, and from an order

overruling a motion to vacate said verdict, and grant a new trial, this appeal was taken.

The firm of Lavender & Spannagel were government contractors, copartners, engaged in buying and selling live stock, and in keeping a general retail store. On the 10th day of February, 1890, for the purpose of obtaining credit with the plaintiffs, a copartnership engaged in the wholesale mercantile trade, and in response to an inquiry concerning their financial condition, Lavender & Spannagel made and delivered to, and upon a blank furnished by, plaintiffs a statement of their assets and liabilities; and again, on the 21st day of July, 1890, when plaintiffs were considering the propriety of extending to them further credit, by the sale and delivery of the goods in controversy, and in response to a request for a full and complete statement, they informed plaintiffs that their assets and liabilities were practically the same as shown by the statement of February 21, 1890. In the enumeration of liabilities contained in such statement, opposite the item "Owing on any other debt, of any kind whatever," there was some ambiguity, and a dispute arose at the trial as to the amount specified. Mr. Spannagel, who prepared the property statement, testified positively that the amount was $20,000, and was so represented upon the statement of assets and liabilities when the paper left his hands, upon its way to plaintiffs. Mr. Wheeler, a member of the partnership plaintiff, testified, in effect, that the item was $2,000, as he read it, when the statement was first placed in his hands by his assistant credit man, and that certain changes have since been made upon the paper; and in this he was corroborated by two witnesses, who testified that the amount was $2,000 when it reached plaintiffs' office, and that since that time an additional cipher has been placed in the debit column, and the amount changed to $20,000. The question was submitted to the jury under a proper instruction, and being material, and at issue, and there being a direct conflict in the evidence involving the veracity of witnesses, and the jury having returned a general

verdict in favor of the defendant upon all the issues, we must, for the purposes of this appeal, conclude that the amount of the item as specified was originally $20,000.

In support of the allegations of their complaint, and as a basis for the introduction of a letter under date of July 21, 1890, addressed to plaintiffs by Lavender & Spannagel, in response to an inquiry concerning their financial condition, in which they assured plaintiffs that their assets and liabilities were "practically the same as last spring, when you received statement from us," the following report, to which said letter related, was offered and received in evidence:

"SCOTLAND, 2–10, 1890.

"The following is a statement of our assets and liabilities, made to Tootle, Hosea & Co., for the purpose of obtaining credit with them:

### ASSETS.

| | |
|---|---:|
| Merchandise on hand, present value, about | $ 18,500 00 |
| Amount due on notes and accounts, about | 14,500 00 |
| Real estate, stores, corn cribs, four lots, stock sheds, yards, scales, and fixtures, etc. | 7,500 00 |
| Personal property: 152 fat cattle, steers, 130 head hogs and 25 hogs on feed | 8,000 00 |
| About 4,000 bushels of corn, horses and wagons | 1,100 00 |
| Cash on hand and in bank | 250 00 |
| Fifty-one per cent of $5,600.00 in creamery shares paid in | 2,856 00 |

### LIABILITIES.

| | |
|---|---:|
| Owing for merchandise, about | $ 12,000 00 |
| Borrowed money, banks, and cattle | 10,000 00 |
| Mortgage on real estate | 1,800 00 |
| Owing on any other debt of any kind whatever | 20,000 00 |

"We cannot give you exact figures, as we have not taken inventory this year, and don't claim above statement exact to the letter or figures, but nearly so. 'How much insurance have you?' $13,500.00. 'Are you doing a credit or cash business?' Both. 'How long have you been in business?' A. Lavender, 15 years; as Lavender & Spannagel, 3½.

LAVENDER & SPANNAGEL, Scotland, S. D."

The following letter accompanied the foregoing statement, and was offered and received in evidence:

"SCOTLAND, South Dakota, 2–10, 1890. Messrs. Tootle, Hosea & Co., St. Joseph, Mo.—Gentlemen: Inclosed please find statement as requested. We have not yet taken inventory for this season, as we usually do so when we clean up our cattle and hogs, running account together. However, same is not far from the figures.     Respectfully,
                    LAVENDER & SPANNAGEL."

For about two and one-half months prior to the date of the letter addressed to plaintiffs, in which they stated that the assets and liabilities of their firm were practically the same as when the itemized statement was made, Lavender & Spannagel had done business at a bank then owned and operated by the witness C. G. King, and the ruling of the court in sustaining an objection to the following question propounded by plaintiffs' attorney is urged as error: "Were they in the habit of depositing drafts drawn by themselves upon foreign correspondents?" The relevancy of the evidence to which this preliminary question related was not apparent when the question was asked, and it is still quite doubtful whether such testimony was admissible for any purpose. Counsel should have either informed the court of the purpose of such evidence, or made an offer upon the record to prove specific facts. An affirmative or a negative answer to this question would have done the appellants no good. It is a matter of common knowledge that this may be and is constantly done by business men, innocently and legitimately. If the question was simply prefatory to something which might be material, appellants should have offered to prove such material thing, and the exclusion of such evidence, if material, relevant, and competent, would have been error. Hanson v. Township of Red Rock (S. D.) 63 N. W. 156. Furthermore, the witness was not shown to be sufficiently familiar with the general business habits or usages of Lavender

& Spannagel to enable him to testify concerning the same, had such evidence appeared to be material. It was not error to sustain the objection.

The witness Spannagel was asked to state who purchased the property in controversy at the execution sale. As the purpose of the evidence does not appear, and the inquiry itself suggests the existence of a bill of sale and return of the officer, the court properly sustained an objection to the question, on the specified ground that the same was "incompetent, immaterial, and not the best evidence." Neither was it error to exclude evidence as to the amount that Lavender & Spannagel had been able to pay on their indebtedness since the seizure of the property and the closing of their store by the sheriff on the 12th day of August, 1890.

Although it is urged in the brief of counsel for appellants that the court committed error in ruling upon the foregoing and numerous other questions, the only error of that character specified, or in any manner alluded to, in his statement of the case, containing exceptions upon which the motion for a new trial was heard and determined, is the following: "The court erred in sustaining defendant's objection to the introduction in evidence of Exhibits N and O." Had the appeal been taken from the judgment without a motion for a new trial, errors of law occurring at the trial, and duly excepted to, when properly presented, may be reviewed; but when an appeal is taken from an order overruling a motion for a new trial only, the errors of law relied upon must be specified and presented to the trial court upon the motion for a new trial, in order to be available on appeal. It would be manifestly unjust to say that a trial court, upon its own motion, must examine and consider, upon the hearing of a motion for a new trial, all its rulings upon questions of evidence, without having its attention in any manner directed thereto; and such a holding would enable a party to demand a new trial upon one record, and have the action of the trial court in refusing to grant the same reviewed upon a

different record, containing alleged errors of law, to which its attention had not been called upon the hearing. "Error in law occurring at the trial, and excepted to by the party making the application," is a statutory ground for a new trial; and, when such ground is relied upon, the particular errors complained of must be specified, or they will be disregarded upon the hearing of the motion. Comp. Laws, Sec. 5088, Subdivision 7; *Id.* Sec. 5090, Subdivision 3.

Numerous errors may occur on the trial, and be excepted to, and it is but fair to presume that all of such as are relied upon will be presented to the trial court, and urged as a ground for a new trial. When no appeal is taken from the judgment, only such errors of law occurring at the trial, and excepted to, as were presented to the trial court, will be reviewed upon an appeal from an order overruling a motion for a new trial. Each ruling must be specified. Coleman v. Gilmore, 49 Cal. 340; Beal v. Stone, 22 Iowa 447; Raymond v. Thexton, 7 Mont. 299, 17 Pac. 258; Street v. Mining Co., 9 Nev. 251; Elliott v. Woodward, 18 Ind. 184; Snodgras v. Hunt, 15 Ind. 274; Putnam v. Railway Co., 22 Mo. App. 589; Elliott App. Proc. par. 853. As it is quite evident that counsel for appellants did not regard the alleged errors of law omitted from the statement settled by the court of any importance, and that the respective rulings of the court thereon would be sustained on review, we deem this an expedient and opportune time to announce and apply the rule of practice above stated.

To the ruling of the court upon appellants' offer to introduce in evidence Exhibits N and O we will now direct our attention. Exhibit N purports to be a statement of assets and libilities, made by Lavender & Spannagel to a Chicago firm on the 3d day of February, 1890, but, as it was shown that the same had been materially changed since it left their hands, its inadmissibility is conceded by counsel for appellants. Exhibit O was a similar statement, made by the same firm to the Credit Guaranty Company of Minneapolis on the 2d day of May, 1890;

but, as it did not appear that either of the plaintiffs had ever seen
or heard of Exhibit O before the goods were sold and delivered
to Lavender & Spannagel, and for the reason that one of the
partnership plaintiffs, the credit man of the firm, had testified
that the credit was based entirely upon the statement of assets
and liabilities, made directly to them on the 10th day of Febru-
ary, 1890, and the letter of July 21, 1890, relating thereto, and
for the further reason that Exhibit N which was confessedly
incompetent, was offered in connection with Exhibit O, we are
clearly of the opinion that the offer, as made, was properly re-
jected, as not tending to prove any of the issues raised by the
pleadings.    The question presented is not one requiring us to
determine whether a material written instrument may be ex-
cluded, for the sole reason that it is offered with another that
is incompetent.   We suggest, however, that the better and
more orderly practice would be to have each marked as an ex-
hibit for identification, and offered in evidence, one at a time.
Assuming only that Exhibit O was materially false, and calcu-
lated to deceive, the representations therein contained were not
relied upon by, nor had they been communicated to, plaintiffs,
until long after the transaction sought to be rescinded.   No
conspiracy or organized scheme to indiscriminately obtain prop-
erty by false and fraudulent representations was pleaded, nor
would Exhibit O, if admitted, tend to establish such common
purpose or intent.   Under no theory or tenable view of the case
was in evidence competent.   Jordin v. Osgood, 109 Mass. 457.
Although the record contains no available exception or assign-
ment of error relating to the court's instructions, we have ex-
amined the entire charge, and find the law of the case therein
correctly stated.

At the conclusion of the introduction of evidence, counsel
for plaintiffs moved upon the case, as made, for the direction of
a verdict, and, as all remaining questions are incidental thereto
they will receive merited consideration, in determining whether
the trial court committed error in denying said motion.   It ap-

pears from the itemized statement of assets and liabilities relied upon by plaintiffs, and which was represented as being only approximately correct, that Lavender & Spannagel were doing a diversified credit business; that there was then due them on notes and accounts $5,600 more than their estimated net capital and plaintiffs, as business men are charged with knowledge that the actual cash to be realized from bills receiveable and accounts, thus accumulated by a retail merchant, is much less than the face value thereof. The statement alone, when considered ,with reasonable inferences arising thereform, would justify a jury in finding that the firm of Lavender & Spannagel was insolvent when the same was prepared and submitted to plaintiffs as a basis for credit. Furthermore, plaintiffs actually knew at the time they shipped the goods in controversy that Lavender & Spannagel were technically insolvent, being unable to pay their debts as they fell due in the ordinary course of business. In fact, they owed plaintiffs at the time $750, a portion of which was past due. The statement itself suggests that they were plungers, and the undisputed evidence shows that, with practically no capital, they were doing a business of $250,-000 annually. After making the statement of assets and liabilities, and more than 30 days prior to the date of the letter in which they informed plaintiffs that their financial condition was practically unchanged, it appears from the evidence that Mr. Bogart, at the instance of whom the property in suit was seized on execution by the defendant sheriff, had, by the service of a summons, instituted a suit against Lavender & Spannagel to reduce to judgment his claim of about $10,000, evidenced by certain promissory notes overdue; and it is claimed by counsel for appellant that their omission to notify plaintiffs of this fact, in response to their inquiry regarding their financial condition on the 21st day of July, 1890, was alone sufficient to enable plaintiffs to rescind the sale, and recover the possession of the property involved. Mr. Spannagel testified, in effect, that he believed at the time of making the statement that the sum-

mons was served for no other purpose than to stimulate himself and the other members of the firm to a greater effort to raise the money with which to pay the Bogart claim. He did not expect a judgment to be entered, and that the indebtedness would continue to exist, just as reported in the itemized statement of liabilities. It also appears that the firm had lost $5,000 in some cattle deal between the date of the statement of February 10, 1890, and the letter of July 21, 1890, in which it was represented that their assets and liabilities were practically the same as at the former date. It is further shown, by the undisputed evidence, that the value of their retail mercantile business had been increased during that time exactly 42 per cent; that they had, in the meantime, or between June 1st and August 12th, paid to Eastern creditors over $6,600; that plaintiffs were directed by Lavender & Spannagel to withhold, and not ship, until September, $1,700 worth of the goods levied upon in their store on the 12th day of August. It appeared that their business was conducted in the usual and ordinary manner, and, in view of all the facts and circumstances, we think the case was properly submitted to the jury.

It was said by Judge BREWER in Lumber Co. v. Ott, 142 U. S. 622, 12 Sup. Ct. 318, that "the fact that a debtor, in rendering a statement of his financial condition to a creditor, largely overestimates the value of his property, does not establish a fraudulent intent, when he specifies the various items of his property, thus enabling the creditor to make further investigation as to their value." Upon the record, as presented, we cannot say that the trial court abused its discretion in denying the motion for a new trial, and the order appealed from is affirmed.