## COURT OF APPEALS,

### Feb., 1908.

# THE PEOPLE v. JOHN W. NEFF.

### (191 N. Y. 210.)

**(1.) GRAND LARCENY—SUFFICIENCY OF EVIDENCE TO WARRANT CONVICTION.**

The evidence examined on the trial of an indictment for grand larceny alleged to have been committed by the defendant in corruptly countersigning, as county auditor of Erie county, and thus certifying to the correctness of, a purported warrant for $7,500, payable to a certain contractor on his contract with the county, whereby payment of that amount was procured from the county treasurer, when, as a matter of fact, the said contractor had, to the knowledge of the defendant, been much overpaid, and *held*, to warrant a verdict convicting the defendant of the crime charged.

**(2). CONSTITUTIONAL LAW—POWER OF GOVERNOR TO CONVENE EXTRAORDINARY TRIAL TERM OF SUPREME COURT.**

It is within the power of the governor of the state to convene an extraordinary term of the Supreme Court for the special purpose of conducting the trial of a specific indictment for crime.

**(3.) TRIAL—CONSTRUCTION OF CONTRACT—CHARGE.**

The contract upon which the money was paid examined in connection with the resolution of the board of supervisors authorizing it and with the evidence of things done by the contractor and defendant in connection with the project and contract, and *held*, to warrant a charge by the trial court, as matter of law, that the contractor was not entitled to receive an amount claimed by him in excess of the compensation which he had already collected at the time of the drawing of the warrant in connection with which the defendant has been convicted. The possibility that the defendant might in good faith have made a mistake in construing the contract and might have honestly believed that the contractor was entitled to the money called for by the warrant was adequately taken care of by the trial judge in the interest of the defendant, where he charged in various ways that if the jury should find that the defendant made such mistake and thus believed, he could not be convicted.

**(4.)** INDICTMENT—WHEN INDICTMENT FOR GRAND LARCENY IN COM-
MON-LAW FORM PROPER.

A county officer, who has been a party to feloniously procuring
the payment of county moneys by a purported warrant, resting
upon no lawful authority or foundation and inherently illegal and
invalid, upon which the county treasurer, in good faith but without
authority, parted with money of the county, cannot be deemed
to have procured such payment under circumstances that would
sustain a claim that legal title to the money had been secured
by false representations, thereby necessitating the framing of an
indictment for larceny so as to charge the commission of the
crime by that means, but mere possession of such money was
obtained, which was not any more valid or effective than it would
have been had the money been procured by the purely physical
process of removing it from the money drawer or safe, and, hence,
an indictment in the common-law form, charging that the defend-
ant "feloniously did steal, take and carry away contrary to the
form of the statute," etc., conforms to the facts and is valid.

**(5.)** EVIDENCE—WHEN EVIDENCE OF ACTS TENDING TO PROVE THE
COMMISSION OF ANOTHER CRIME COMPETENT.

Evidence that prior to the commission of the crime, and while
the question of the acquisition of certain land for public purposes
leading up to the letting of the contract in question, was pending
undetermined before a committee of the board of supervisors, the
defendant had paid money to certain members of the committee
under circumstances which might warrant the inference of an
intention on the part of the defendant to bribe such members so
as to procure favorable action on the project, and testimony of the
contractor as to his raising and paying money to certain supervisors
after they, in connection with and in the presence of the
appellant, had notified him that it would be necessary to use
money to secure favorable action by the board of supervisors on
his proposed contract, is competent, as parts of a series of acts
performed in connection with a single project, to show that the
defendant was early possessed of a corrupt purpose which finally
led up to and was consummated in his alleged crime, especially
where one of the crucial questions finally submitted to the jury
was as to his good faith in auditing the alleged wrongful payment.
*People* v. *Neff*, 122 App. Div. 135, 21 N. Y. Crim. 475, affirmed.

APPEAL from an order of the Appellate Division of the
Supreme Court in the fourth judicial department, entered

November 16, 1907, which affirmed a judgment rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree because of his acts, as county auditor of Erie county, in certifying and causing payment October 1, 1901, of a warrant for the sum of $7,500 to the order of one Conover, a contractor, when nothing was due to him.

The transaction in question sprang out of proceedings by the county to acquire lands occupied by an old cemetery in the city of Buffalo for an armory site.

In 1900 an act was passed by the legislature (L. 1900, ch. 277) authorizing the board of supervisors of the county of Erie to acquire what was known as the North Street Cemetery as a site for an armory. Such act, in addition to many other provisions not material here, provided for the appointment of a commission to determine what damages, if any, the owners of lots in such cemetery would be entitled to by reason of the taking of said lands and the probable. cost of removing to another cemetery and re-interring bodies and re-setting slabs, monuments, etc., " the damages for taking lands shall in every case be considered and reported apart from that of removal and re-interment of remains and the removal and re-setting of monuments, slabs and stones; " that within sixty days after the confirmation of the report of the commissioners, the board of supervisors should pay to the persons to whom it had been awarded the compensation awarded.to them respectively, such compensation being paid into court where the person entitled thereto refused to receive it or was unknown or incapacitated; that within thirty days after payment and upon prescribed notice the owners of lots should remove remains of persons, monuments, etc., and in case of their failure so to do the board of supervisors should cause such removal and re-interment of bodies and removal and re-setting of monuments, etc., the expenses thereof to " be paid as far as possible from the sums.awarded to the owners of lots from which the removal is made." Said act also authorized the board of

supervisors to purchase lands in one or more cemeteries in which might be interred the remains taken from the old cemetery.

Appellant's crime is charged to have been committed in connection with purported payments made on the contract with the county for these removals.

In April, 1900, the board of supervisors resolved to take such cemetery lands and directed that proceedings be instituted for that purpose, which was done, and commissioners were appointed as and for the purpose in said act prescribed. The report of these commissioners was thereafter made and confirmed fixing the amount of the aggregate awards to be allowed for the purposes aforesaid at the sum of $210,000, and the board of supervisors accepted such result and authorized the issuing of bonds to that amount for the purpose of paying said sums.

Thereafter payment of damages in accordance with the award was made to various lot owners and notice given requiring the removal of bodies, etc., all as required, and finally in March, 1901, the board proceeded to provide for the removal and re-interment of such bodies and re-setting of such monuments, etc., as still remained in the cemetery. It passed a resolution providing for the removal of such unclaimed bodies and of monuments and slabs over their graves to what was known as Lakeside Cemetery, in a neighboring town, " Provided said Lakeside Cemetery shall execute to the County of Erie a conveyance of sufficient lands in its cemetery for the removal thereto and re-interment therein of the said bodies and the removal thereto and re-setting therein of the said slabs, stones and monuments; and provided further, that R. J. Conover, Comptroller of the said Lakeside Cemetery Association, shall execute to and with the County of Erie an agreement to convey said lands, and to remove and re-inter said bodies and to remove and re-set said slabs, stones and monuments at his own expense and in such manner as to preserve the identity of said body as far as possible, and in all cases where the remains of any body are distinguishable

to re-inter the same in a separate grave; the County to pay the said R. J. Conover, Comptroller of the Lakeside Cemetery Association, in consideration thereof, the amount of the awards allowed by the Commission heretofore appointed, as the damages for taking the lands and removing the said bodies from the so-called North Street Cemetery, for the bodies so removed and re-interred, and for the slabs, stones, and monuments so removed and re-set."

In accordance with this resolution, March 26, 1901, a contract was made by the county with Conover. This contract recited the passage of the resolution last referred to and contained an agreement on the part of Conover, who was comptroller thereof, that the Lakeside Cemetery Association would execute a conveyance of sufficient lands in its cemetery for the re-interment of bodies, and that he would remove thereto bodies, monuments, etc., remaining in the old cemetery, in consideration whereof the board of supervisors agreed in behalf of the county to pay him " the amount of the awards allowed by the appraisal commission in its report heretofore confirmed by the Supreme Court of Erie county as to the damages for taking the lands and removing the said bodies from the North Street cemetery, for the bodies so removed and re-interred, and for the slabs, stones and monuments so removed and re-set."

Thereafter Conover entered upon the performance of his contract, and between June 5, 1901, and August 6, 1901, both inclusive, there had been paid by the county on warrants drawn to his order the sum of $81,604, as claimed by the People, and not seriously disputed by the appellant. On October 1st another warrant for $7,500 was drawn to his order, countersigned by appellant as auditor, and paid, and it is in connection with this particular warrant and payment that defendant is charged with the crime of larceny.

It is concealed that at the time when it was drawn and presented and paid, Conover had already drawn many thousand

dollars more than he was entitled to, unless under his contract he was entitled to collect in addition to the amounts specifically awarded by the appraisers for removing and re-interring bodies and re-setting tombstones, etc., an amount equal to the compensation awarded to owners of lots from which removals were made, for their lots or, as they are designated in this case, land damages.

June 18, 1901, the board of supervisors adopted the following resolution, which is regarded by the People as of much importance, because of the opportunity which it gave to appellant to control and facilitate payments on the Conover contract: "Resolved, That the Clerk of this Board be and he is hereby authorized to draw all warrants in payment of claims for the removal of bodies, monuments and headstones from the North Street Cemetery to the Lakeside Cemetery or any other cemetery, when the same have been passed upon by the Auditor and the Auditor be and he is hereby requested to report to this Board a statement of the number of bodies taken from the North Street Cemetery."

At all the times to which reference has been made the appellant was county auditor, and as such it was his general duty to investigate and report on the correctness of all claims presented against the county and to countersign all warrants on the county treasurer for the payment of any claims ordered to be paid, and as such official he did so countersign the warrants in favor of Conover, including the one especially under consideration.

There was much evidence of his unlawful activity in connection with the proceedings looking to the adoption and acquisition of this site, and tending to prove his entire familiarity with, and promotion of, what was done, and tending to establish that in connection with various supervisors he was receiving part of the moneys collected by Conover from the county as aforesaid, and that he well knew how much Conover was entitled to.

*William B. Hoyt* for appellant. The court erred in charging the jury that under his contract Conover was not entitled to any awards made by the appraisal commissioners for land damages, or to the equivalent of any such land damages. (*Matter of Beekman Street,* 4 Bradf. 503; *Went v. Methodist Church,* 80 Hun, 266; 150 N. Y. 577; *Buffalo City Cemetery v. City of Buffalo,* 46 N. Y. 503.) The court erred in permitting evidence to be given over an objection and exception which tended to prove that the defendant had been guilty of other crimes and which had no legitimate bearing upon the matter in issue. (*People v. Sharp,* 107 N. Y. 427; *Coleman v. People,* 55 N. Y. 81; *People v. Corbin,* 56 N. Y. 363; *People v. Wolf,* 183 N. Y. 464; *People v. Mull,* 167 N. Y. 247; *People v. Fielding,* 158 N. Y. 542; *People v. Molineux,* 168 N. Y. 264; *People v. Loomis,* 178 N. Y. 400; *Greene v. White,* 37 N. Y. 405; *V. R. R. Co. v. O'Brien,* 119 U. S. 103; *Coleman v. People,* 58 N. Y. 555.) The court erred in overruling the objections to the testimony of the witness John Stock in reference to his transactions with Fred Greiner, and in denying the defendant's motion to strike out such testimony. (*People v. Wolf,* 183 N. Y. 464; *People v. Mull,* 167 N. Y. 247; *People v. Fielding,* 158 N. Y. 542; *People v. Crapo,* 76 N. Y. 291.) The court erred in admitting the testimony of the witness Fisher. (*People v. Sharp,* 107 N. Y. 427.) The indictment charges the crime of common-law grand larceny. This charge was not supported by the evidence or set forth in the People's opening. The motions made by the defendant at the close of the People's opening, at the close of the People's testimony, and also at the close of the case, should have been granted. (Code Cr. Pro. § 254; *People v. Dumar,* 106 N. Y. 509; *People v. Miller,* 64 App. Div. 450; *People v. Weyman,* 4 Hun, 511; *People v. Dunn,* 53 Hun, 381; *Zink v. People,* 77 N Y. 121; *People v. McDonald,* 43 N. Y. 61; *Smith v. People,* 53 N. Y. 111; *People v. Genet,* 19 Hun, 91; *S. Nat. Bank v. Curtiss,* 2 App.

Div. 508; *Sieling* v. *Clark,* 18 Misc. Rep. 464.)   The term of court was not fixed and the court was not convened pursuant to any constitutional authority.   The objection made to the trial of the case and the motion for arrest of judgment upon this ground should have been granted.   (*Butler* v. *Saginaw Co.,* 26 Mich. 27; *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *Rathbone* v. *Wirth,* 150 N. Y. 459; *Norton* v. *Shelby Co.,* 118 U. S. 442; *People* v. *Young,* 18 App. Div. 162; *Brumley* v. *State,* 20 Ark. 77; *Sherwood* v. *Phelps,* 53 Ark. 37; *Ex parte de Hay,* 3 S. C. 264; *Wilson* v. *State,* 37 Ter. Cr. 373; *People* v. *Moneghan,* 1 Park. Cr. Rep. 570; *People* v. *Bradwell,* 2 Cow. 445.)

*Frank A. Abbott, District Attorney,* for respondent.   The indictment charging the defendant with the crime of larceny in the common-law form is good, and there is no variance between the proof and the crime as charged.   (*People* v. *Miller,* 169 N. Y. 352; *People* v. *Dunn,* 53 Hun, 381; *People* v. *Jackson,* 3 Park. Cr. Rep. 599; *Saltau* v. *Gerdau,* 119 N. Y. 392; *Commonwealth* v. *Wilde,* 5 Gray, 83; *Commonwealth* v. *Collins,* 12 Allen, 181; *Oakley* v. *State,* 40 Ala. 373; *Madden* v. *State,* 1 Tex. App. 204; *Reg.* v. *Steer,* 3 Cox Cr. Cas. 187; *Reg.* v. *Robins,* 29 Eng. L. & Eq. 544; *Rex* v. *Longstreeth,* 1 Moody C. C. 137; *Rex* v. *Small,* 8 C. & P. 46.)   The court in which the defendant was tried was regularly and lawfully constituted; the legislative enactment authorizing the governor to convene an extraordinary term is not violative of the Constitution. (*Worthington* v. *L. G. and A. Co.,* 164 N. Y. 81; *Bank of Chenango* v. *Brown,* 26 N. Y. 467; *People* v. *Draper,* 15 N. Y. 543; *Rathbone* v. *Wirth,* 150 N. Y. 470; *People* v. *N. Y. C. R. R. Co.,* 24 N. Y. 497; *Newell* v. *People,* 7 N. Y. 9; *People ex rel. Williams* v. *Dayton,* 55 N. Y. 367; *People ex rel. Simpson* v. *Wells,* 181 N. Y. 257; *U. S.* v. *Fisher,* 2 Cranch, 358.)   The court correctly charged the jury that under his contract with the county, Conover was not entitled to any

awards made by the appraisal commissioners for land damages, or to the equivalent of any such land damages. (*Strauss* v. *U. C. Ins. Co.,* 170 N. Y. 356; *Trustees* v. *Smith,* 98 App. Div. 213; *O'Brien* v. *Mayor,* 139 *N. Y.* 543; *Woolsey* v. *Funke,* 121 N. Y. 87; *Ins. Co.* v. *Dutcher,* 95 U. S. 273; *Fox* v. *Coggeshall,* 95 App. Div. 410; *Anderson* v. *English,* 105 App. Div. 403; *Nichols* v. *Sands,* 131 N. Y. 24; *Hazelton* v. *Webster,* 20 App. Div. 186; 161 N. Y. 628; *Dodge* v. *Zimmer,* 110 N. Y. 43; *Sattler* v. *Hallock,* 160 N. Y. 301.)   The admission of the Stock and Fisher testimony was proper. (*People* v. *Molineux,* 168 N. Y. 305; *People* v. *Mather,* 4 Wend. 260; *People* v. *O'Neil,* 48 Hun, 43; 109 N. Y. 251; *People* v. *Sharp,* 107 N. Y. 461.)

HISCOCK, J.   On evidence fully establishing the principal facts above stated, and many others of a minor, but, considered together, of a very illuminating character, the appellant has been convicted of the crime of grand larceny.   The crime of which he was thus convicted consisted in corruptly counter-signing as county auditor of Erie county, and thus certifying to the correctness of, a purported county warrant for $7,500, payable to one Conover on his contract with the county, and whereby payment of that amount was procured from the county treasurer, when, as a matter of fact, Conover had already been overpaid many thousands of dollars as appellant well knew.

With the general merits of this conviction we have no disposition whatever to disagree.   The evidence establishes beyond any reasonable doubt whatever that while the appellant was holding the office of county auditor and as such was bound to protect the county from unjust and illegal claims, he was the active and wicked promoter of a scheme and conspiracy to despoil its treasury by false and swollen claims.   The only question is whether any such errors arose in the proceedings leading to his conviction that we should reverse the latter.   It is argued with

earnestness and ability by counsel in his behalf that such errors were committed, and although disagreeing with this contention, we shall discuss at some length some of these alleged errors, having given due attention to all of the others.

*First.* An extraordinary term of the Supreme Court was convened by the governor for the special purpose of conducting appellant's trial, and it is claimed that the governor did not have this power, but that the Appellant Division was exclusively vested therewith. We have had occasion recently in the case of *People* v. *Gillette* to consider this same question, and by our decision there given it is definitely and finally settled adversely to the contention of the appellant.

*Second.* As has been pointed out in our statement of facts, the statute under which proceedings were instituted for the acquisition of the cemetery lands provided that the awards made by the commissioners to lot owners in the cemetery for taking their lands should be made and kept entirely separate and apart from the awards made for damages or expenses in removing bodies, tombstones, etc., and it was expressly provided that in case lot owners could not be found or were incompetent or unwilling to accept said awards for lands, the same should be paid into court. The sum fixed and which Conover received for disinterring, removing and re-interring each body was fifteen dollars, and there was an additional allowance varying in different cases for removing and re-setting tombstones, etc. At the time the warrant of October 1, 1901 for $7,500, and in connection with which appellant has been convicted of larceny, was drawn and the proceeds paid on account of the contractor's order, the latter had collected over $80,000 and concededly this exceeded the amount to which he was entitled under his contract by many thousands of dollars unless he was also entitled to receive the awards of a sum equivalent to the awards allowed to lot owners for the lands from which he removed bodies. The court charged as a matter of law that he

was not entitled to receive such sum and it is claimed that this construction of the contract was erroneous. We think, on the contrary, that it was the correct one.

As introductory to the interpretation of the language of the contract to which reference shortly will be made and as bearing upon the disposition with which we should approach such interpretation, it is urged on our attention that while the principal purpose of the contract with Conover was the removal and re-interment of bodies and re-setting of tombstones, and while the statute expressly and separately authorized the board of supervisors to acquire land in which to re-inter bodies, the contract with Conover still did require him in effect to furnish land in the new cemetery for re-interring the bodies, and that, therefore, it was entirely equitable that he should receive for furnishing this land for such bodies as he re-intered, a sum equal to the damages awarded for the lots in the old cemetery from which they were removed. This sum would amount to about $28,000, and while the evidence was not very definite on that subject, we believe that this amount awarded for land in the city of Buffalo would have been an exorbitant sum to pay for a comparatively small area occupied for the re-interment of bodies in the rural cemetery to which they were removed. As already stated, Conover received fifteen dollars per body and other allowances for doing what he did, and there is nothing to indicate that this was not a liberal compensation. We believe that the construction contended for by the appellant would be much more unjust to the county than the one urged by the People can possibly be to the contractor, and that we should not be led by this consideration unduly to strain the language of the contract in behalf of the contractor for the purpose of exonerating this appellant.

The resolution providing for the execution of the contract with Conover by itself is probably broad enough to sustain appellant's construction. After reciting the services to be per-

formed, it reads: " The county to pay to the said R. J. Conover, Comptroller of the Lakeside Cemetery Association, in considera- tion thereof (the acts to be performed by him) the amount of the awards allowed by the Commission heretofore appointed as the damages for taking the lands and removing the said bodies from the so-called North Street Cemetery, for the bodies so removed and re-interred, and for the slabs, stones and monuments so removed and re-set." The contract itself, however, reads differently. After providing for the things to be done by the contractor, it says: " the party of the second part (the county) in consideration thereof, (Conover's agreement) agrees to pay to the party of the first part (Conover) the amount of the awards allowed by the Appraisal Commission in its report here- tofore confirmed by the Supreme Court of Erie County as to the damages for taking the lands and removing the said bodies from the North Street Cemetery, for the bodies so removed and re-interred, and for the slabs, stones and monuments so removed and re-set."

We think that the words " as to the damages for taking the lands and removing the said bodies from the North Street Cemetery," are merely descriptive of the commissioner's report referred to and for purposes of interpretation may be eliminated, leaving the agreement to read: " The party of the second part * * * agrees to pay to the party of the first part the amount of the awards allowed by the appraisal commission in its report heretofore confirmed by the Supreme Court of Erie County, for the bodies so removed and re-interred, and for the slabs, stones and monuments so removed and re-set." This language would clearly mean that the contractor was to receive simply the amount of the awards allowed for the removal and re-interment of bodies, and for slabs, etc., removed and re-set, and that he was not to receive the awards or any equivalent of the awards for lands taken.

Many things were done in connection with this project and

in connection with the contract by Conover and the appellant which confirm this construction.

In the first place, the sum provided through the bond issue by the board of supervisors for carrying out the enterprise, including the work done under the Conover contract, was not sufficient to cover any such theory as is now advanced by appellant, and while the board of supervisors did provide other funds afterwards, their general proceedings do not seem to us to have been in line with the present contention of appellant.

While Conover claimed on the trial that he always thought that he should be awarded a sum equivalent to these " land damages," as they were called, and was so advised by some of the county officials, as a matter of fact he never presented any claim therefor until long after payment of the warrant in question. On the other hand, upon at least three occasions, he presented a claim for the " removal " or " removal and re-interment " of bodies, including no claim for the lot damages, and the defendant Neff upon at least three occasions, in making certificates and requisitions for moneys to be paid on Conover's contract, changed the printed form so that it was entitled " removal awards " instead of " land awards," as it had been originally printed, and made the requisitions for an amount of fifteen dollars per body removed, which excluded any sum for lot damages now claimed. So that we are not without quite cogent evidence of a practical construction by this appellant and Conover of the contract which is in accordance with the one now adopted by us.

Still it may be urged with considerable force that an honest person, especially a layman, might in good faith make a mistake and construe this contract as meaning that which is now claimed for it. This possibility, however, was adequately taken care of by the trial judge in the interest of the appellant. He charged in various ways to the effect that if the latter made an honest mistake or an honest misinterpretation of the contract and

did honestly believe that under it Conover was entitled to the land awards and the payment which is challenged was intended to apply in part upon land awards to which he believed Conover entitled, he could not be convicted. The appellant, therefore, received his full rights in that connection.

*Third.* It is urged that there was a fatal variance between the indictment and the evidence. The appellant was indicted for larceny in the common-law form in that he " feloniously did steal, take and carry away contrary to the form of the statute," etc., seventy-five hundred dollars. It is insisted that on the evidence if he was guilty of any crime it was that of procuring payment of money on a warrant which falsely represented in effect that Conover was entitled to payment when he was not, and that, therefore, he was guilty of larceny by means of false pretenses as now recognized by section 528 of the Penal Code, and that the indictment should have been framed accordingly.

It may be admitted at once that under an indictment for common-law larceny a person might not be convicted of larceny in obtaining title to property by means of false representations. We are inclined to think, however, that this question is not presented in this case.

The statute relative to the acquisition of the cemetery from which we have already quoted provides that " The proceeds of the sale of said bonds (referring to those to be issued for the purpose of raising money with which to acquire the site) shall be retained by said county treasurer and shall by him be paid upon the order of the board of supervisors for the compensation awarded for said land, the cost of the proceedings, the cost of land purchased and taken in any cemetery in Erie county, the cost of removal and re-interment of bodies, and the removal and re-setting of monuments, slabs and stones." (L. 1900, ch. 277, section 6.) This provision is entirely in accord with the general provisions of section 12 of the County

16

Law (L. 1892, ch. 686) to the effect, " The board of supervisors shall   *   *   * , (2) Annually audit all accounts and charges against the county, due or to become due, during the ensuing year, and direct the raising of sums necessary to defray them in full."

Section 141 of the County Law provides that " The county treasurer shall : (1) Receive all moneys belonging to the county, and all other moneys by law directed to be paid to him, and apply them, and render an account thereof, as required by law. "

Section 143 provides for the deposit of these moneys, and section 146 provides: " The county treasurer shall draw the moneys so deposited only for the payment of claims ordered to be paid by the board of supervisors, or other lawful authority,  *   *   * ; and if he shall draw or appropriate any money for any other purpose, it shall be deemed a malfeasance in office, and cause for removal therefrom."

Section 5 of chapter 173 of the Laws of 1895, relative to the auditor of Erie county, provides: " All warrants upon the county treasurer for the payment of any claim examined by the county auditor and ordered paid. by the board of supervisors, shall be drawn by the clerk of such board and countersigned by the chairman thereof and by the county auditor."

There is no pretense that in accordance with the requirements of the statute the board of supervisors ever ordered the payment of the sum which was paid by the county treasurer on the warrant of October 1, 1901.   Instead of doing this, as we have already seen, in the preceding June, possibly as the result of unseen and forbidden influences, the board had attempted to abdicate its proper office of passing upon and ordering the payment of claims and had essayed in advance and generally to delegate these duties to the appellant as county auditor by passing the resolution which has already been quoted at length.   It is perfectly well settled that the duties imposed upon the board of passing upon and auditing claims and ordering their payment could not be thus delegated.   In addition no claim was ever pre-

sented as required by sections 3 and 5, chapter 173 of the Laws of 1895, and of course no certificate by the auditor was ever made out which even in form authorized the issue of the purported warrant. And, as still further indictating the guilty knowledge and activity of this defendant there was evidence from which the jury were fully authorized to find that the warrant was taken out of order from the back part of the book of warrant blanks; that its stub was marked by defendant with the misleading word " sample " to divert suspicion and that a large portion of the proceeds of the warrant were received by defendant and his co-conspirators.

So it results that the appellant has been a party to procuring the payment of this money, felonious in other respects, by a purported warrant which rested on no lawful authority or foundation and which was inherently illegal and invalid. And the county treasurer being a mere custodian authorized to pay claims when properly passed on and audited and having no discretion to do otherwise, very likely acting without bad faith but nevertheless without any authority, has parted with the money of the county upon a purported warrant which in fact was utterly invalid. We think it is very plain that under such circumstances legal title to the money was not secured by false representations, but that on a void warrant mere possession was obtained which was not any more valid or effective than it would have been had the appellant obtained it by the purely physical process of reaching his hand into the money drawer or safe, and that the form of indictment properly fitted the facts which were developed. (*People* v. *Miller,* 169 N. Y. 352; 16 N. Y. Crim. 281; *Zink* v. *People,* 77 N. Y. 114.)

These views render inapplicable and immaterial certain requests by the appellant to charge with reference to the surrender of title by the county treasurer.

*Fourth.* We shall notice briefly the objections urged on be-

half of the appellant to some of the evidence which was admitted against him.

A witness by the name of Stock was allowed to state in substance that during the years 1900 and 1901 he was chairman of the military committee of the board of supervisors of Erie county, and which committee was influential in deciding the question of the acquisition of the cemetery site; that on one occasion, at the request of Neff, he went to a person who was the attorney for the Lakeside Cemetery Association, to which the bodies were subsequently removed, and received from him $5,000 in bills; that thereafter he met in a room with Neff and a couple of other supervisors, and gave the money thus received to the former, who immediately gave $500 to the witness and to each of the other supervisors, and in connection with the balance " spoke about taking care of the boys, (the witness) presuming he meant the Board of Supervisors." In like manner a witness named Fisher was allowed to testify that during the same years he was a member of the same military committee, and that on one occasion the defendant gave him an envelope containing one hundred dollars.

The date of these transactions is left somewhat uncertain by the evidence as between the two years 1900 and 1901, but apparently they occurred in April, 1900, while the matter of the cemetery site was still pending undetermined before the military committee of the board of supervisors.

We think this evidence was competent. There is no pretense that the appellant had any legitimate reason for the payment of these sums of money to these supervisors, and it is a pretty manifest inference from the evidence that their payment had relation to the matter of the cemetery and the favorable action thereon of these supervisors. The evidence in connection with other testimony tended to show appellant's interest in and connection with the cemetery project in its various stages and it permitted the inference that he was seeking to influence supervisors in their

action upon certain proceedings which were a necessary basis for the final transaction with Conover in respect to which the present crime is charged. If the acts testified to were entirely independent of and disconnected from the criminal acts charged against the appellant his objections to the evidence would be well founded. But that does not seem to us to be the case. They were part of a series of acts performed in connection with a single project which, so far as appellant is concerned, commenced with the advocacy of this cemetery site and ended with the larceny of moneys purporting to be paid out on account of it. We think the evidence was competent to show that early he was possessed of a corrupt purpose which finally led up to and was consummated in his alleged crime, and especially that this is so in view of the crucial question finally submitted to the jury of his good faith in auditing on the Conover contract the payments which he did. The testimony seems to us to be well within the rule cited and approved in *People* v. *Molineux* (168 N. Y. 264, 305; 16 N. Y. Crim. 120).

We think that these same considerations in their general application justified the admission of the evidence by Conover of raising and paying money to the supervisors Gibson and Jackson after they, in connection with and in the presence of the appellant, had notified him that it would be necessary to use money to secure the favorable action of the board of supervisors on his proposed contract.

We think that there are no other allegations of error in the very full brief of the appellant's counsel which require discussion, and we conclude that the judgment of conviction should be affirmed.

CULLEN, CH. J., GRAY, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment of conviction affirmed.